1
2
3
4
5
6
7

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8  DONNA COPELAND, on behalf of herself and
9  all others similarly situated,

NO.

10              Plaintiff,

**COMPLAINT – CLASS ACTION**

11     vs.

**Demand for Jury Trial**

12  ALBION LABORATORIES, INC.; SEEKING
13  HEALTH, LLC; and DESIGNS FOR HEALTH,
    INC.,

14              Defendants.

15
16
17

18          Plaintiff, Donna Copeland ("Copeland" or "Plaintiff"), by and through her undersigned

19  counsel, respectfully files this Class Action Complaint on behalf of herself and a class of

20  similarly situated individuals who purchased, indirectly from Albion Laboratories, Inc., and

21  directly from Designs for Health, Inc. and Seeking Health, LLC, ("Defendants"), a blended

22  form of magnesium glycinate and magnesium oxide known as Magnesium Bisglycinate

23  Chelate Buffered, in which magnesium oxide was not listed in the supplement facts panel on

24  the label, in contravention of the law.

25
26
27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# I.  NATURE OF THE CASE

1.      As consumers have become increasingly health conscious, dietary supplements have become a multi-billion dollar industry.  To navigate the vast array of vitamin and mineral products available on the market today, consumers rely on honest and accurate labels.  Unfortunately, some companies attempt to maximize their profits by mislabeling their supplements in order to trick consumers into paying a price premium for an inferior product.  Defendants are such companies.

2.      Defendants sell a magnesium supplement that contains two kinds of magnesium: magnesium glycinate ("Glycinate") and magnesium oxide ("Oxide").  It is well-known that Glycinate is superior to Oxide because it is a "chelated" magnesium, which is more easily absorbed into the body and causes fewer negative side effects.  Accordingly, the wholesale and retail prices for Glycinate are much higher than for Oxide.

3.      In an effort to cut costs while maintaining demand, Albion blended Glycinate with Oxide ("Albion's Blended Product") and sold it to the other named Defendants ("re-sellers"), who did not list the inferior magnesium, Oxide, anywhere on their Blended Product labels.  They did, however, list the superior magnesium, Glycinate, as the only magnesium ingredient in the "Supplement Facts" panel on their Blended Product labels.  This enabled the re-sellers to charge a price premium for their Blended Products by charging the same price that would be charged for pure Glycinate.

4.      Under the false impression that Defendants' Blended Products were and are pure Glycinate, tens of thousands of consumers have paid a price premium for an inferior form of magnesium, thereby padding Defendants' pockets with undeserved profits.  This suit seeks redress on behalf of consumers who paid a price premium for Defendants' Blended Products under the reasonable, but mistaken, belief that they were pure Glycinate.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

COMPLAINT – CLASS ACTION - 2

## II.  PARTIES

5.      Plaintiff Donna Copeland resides in Spring, Texas, and is a Texas citizen.  She started taking magnesium a few years ago on the advice of her doctor for breast pain due to fibrocystic breasts.  Initially, Plaintiff was taking magnesium citrate, but later, she learned that the absorption rate for the citrate form was low.  Plaintiff's sister's doctor recommended magnesium glycinate and specifically told Plaintiff that she thought Designs for Health was a reputable brand.  As a result, Plaintiff decided to purchase Designs for Health Magnesium Glycinate Chelate.

6.      In August of 2013, Plaintiff purchased her first bottle of Designs for Health Magnesium Glycinate Chelate.

7.      In December of 2014, Plaintiff went to purchase another bottle of Designs for Health Magnesium Glycinate Chelate when she noticed a review on Amazon.com about the product.  It was there that Plaintiff learned that Designs for Health Magnesium Glycinate Chelate was not pure Glycinate, but that it was blended with Oxide.  Plaintiff immediately stopped taking Designs for Health Magnesium Glycinate Chelate and searched for another brand she believed was pure Glycinate.  It was then that Plaintiff discovered Seeking Health Optimal Magnesium, which she believed was pure Glycinate.

8.      Plaintiff took Seeking Health Optimal Magnesium for the first time on or about January 5, 2015, under the impression that it was pure Glycinate.  Shortly thereafter, Plaintiff discovered that this brand also was adulterated with Oxide.

9.      After learning that Seeking Health Optimal Magnesium was not pure Glycinate, Plaintiff stopped taking it and purchased another product that is pure Glycinate.

10.     It is important to Plaintiff to get maximum absorbency from magnesium because she plans to start an Iodine protocol in an effort to reduce the severity of her fibrocystic breasts, and she believes magnesium is a very important cofactor of that protocol.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

11.     Were it not for Defendants' unfair and deceptive practices, Plaintiff and the Class members would not have purchased the Blended Products or paid a price premium to purchase them.  If the Blended Products did in fact contain pure Glycinate, as promised, rather than also containing Oxide, Plaintiff would likely have continued to purchase the Blended Products and pay the price premium.

12.     Defendant Albion Laboratories, Inc. ("Albion"), is a corporation organized under the laws of the State of Utah, with its headquarters located at 101 North Main Street, Clearfield, Utah, 84015.  Albion, therefore, is a citizen of Utah.  Albion manufactures and supplies mineral amino acid chelate nutrition to industries worldwide.

13.     Defendant Seeking Health, LLC ("Seeking Health"), is a corporation organized under the laws of the State of Washington.  Seeking Health's headquarters are located at 3140 Mercer Avenue, Bellingham, Washington, 98225.  Seeking Health, therefore, is a citizen of Washington.  Seeking Health has marketed and sold nutrition supplements, including the Blended Product, worldwide.

14.     Defendant Designs for Health, Inc. ("Designs for Health"), is a corporation organized under the laws of the State of Connecticut.  Designs for Health's headquarters are located at 980 South Street, Suffield, Connecticut, 06078.  Designs for Health, therefore, is a citizen of Connecticut.  Designs for Health has marketed and sold nutrition supplements, including the Blended Product, worldwide.

### III.  JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, under 28 U.S.C. § 1332(d).  Jurisdiction is proper because: (1) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs; (2) the named Plaintiff and the Defendants are citizens of different states; and (3) the proposed class has more than 100 members.  28 U.S.C. § 1332(d)(2), (5)(B).

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial

2   part of the events giving rise to the claim occurred within this judicial district and because

3   Defendants have marketed and sold the Blended Product at issue in this action within this

4   judicial district and have done business within this judicial district.

5                              **IV.  GENERAL ALLEGATIONS**

6    17.    Consumers are increasingly health conscious and often rely on vitamin and

7   mineral supplements to promote health and prevent disease.  A multibillion dollar industry,

8   nutrition supplements have become a mainstay of the American diet and lifestyle.  However,

9   because most supplements are purchased over-the-counter, and particularly in the era of self-

10  diagnosis on the Internet, consumers depend on the accuracy and honesty of labels so that they

11  are able to make informed decisions about which products to purchase for their health needs.

12   18.    Magnesium has become one of the best-selling minerals on the market, as

13  studies show that a staggering 68% of Americans do not consume the recommended daily

14  intake of magnesium.  Magnesium is critical to a wide variety of essential bodily functions,

15  including protein synthesis, muscle and nerve function, bone development, blood glucose

16  control, and blood pressure regulation.  Magnesium deficiencies have also been linked to

17  insomnia.  Magnesium supplements are therefore growing in popularity as consumers learn

18  about the consequences of a deficiency in this essential mineral.

19   19.    Because magnesium must be combined with another substance to absorb into

20  the body properly, there are numerous types of magnesium supplements.  The types of

21  magnesium supplements are defined by the substances with which the magnesium is combined,

22  and include:  glycinate, malate, citrate, threonate, taurate, chloride or lactate, carbonate, sulfate

23  or hydroxide, and oxide.  The greater the "bioavailability," the greater the absorption.

24

25

26

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

20.      Glycinate is one of the most bioavailable forms of magnesium "and is typically ideal for those who are trying to correct a deficiency."[1]  Oxide, by contrast, is one of the least bioavailable forms of magnesium and has an unpleasant laxative effect.[2]  One study found that Oxide only has a 4% absorption rate.[3]  Another study found that Glycinate has a more immediate and higher overall absorption rate in, and is better tolerated by, patients who have difficulty absorbing and retaining magnesium.[4]  The University of Kansas Medical Center clearly states: "Magnesium oxide is poorly absorbed, and hence likely to cause diarrhea.  We do not recommend magnesium oxide."[5]

21.      Livestrong.com also recommends magnesium Glycinate over magnesium Oxide:

> "If you are suffering from a magnesium deficiency, magnesium glycinate or other forms of chelated magnesium may be your best bet because they are so well absorbed, says Carolyn Dean, author of 'The Magnesium Miracle.' Your body may tolerate magnesium glycinate better than magnesium oxide, which is commonly used for this purpose, notes Donald Goldberg, lead author for 'The Best Supplement for Your Health.'"[6]

22.      Dr. Andrew Weil, a well-known naturopath, recommends Glycinate over Oxide.[7]

---

1. http://articles.mercola.com/sites/articles/archive/2012/12/17/magnesium-benefits.aspx; *see also* http://www.huffingtonpost.com/dr-mark-hyman/magnesium-the-most-powerf_b_425499.html (recommending Mg citrate, glycinate, taurate, or aspartate).

2. http://www.emed.com.au/nutrition/vitamin-mineral-info/magnesium/not-all-magnesium-supplements-are-the-same/ http://www.emed.com.au/3438 (explaining that Mg oxide is          used as a laxative).

3 Firoz M, Graber M. (2001) Bioavailability of US commercial magnesium preparations. Magnesium Research. 14(4):257-62.

4. Schuette S.A. et al.(1994) Bioavailability of magnesium diglycinate vs magnesium oxide in patients with ileal resection. J Parenter Enteral Nutr. 18(5):430-5.

5. http://www.kumc.edu/school-of-medicine/integrative-medicine/the-benefits-of-magnesium.html.

6.http://www.livestrong.com/article/271338-what-are-the-benefits-of-magnesium-glycinate/.

7. http://www.drweil.com/drw/u/ART02805/magnesium.html (Dr. Weil recommends "magnesium citrate, chelate, or glycinate, and avoid magnesium oxide, which can be irritating to the digestive tract").

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

COMPLAINT – CLASS ACTION - 6

23.     Even Albion's own studies, which are readily available on the Internet, promote the superiority of Glycinate as compared to Oxide, as the following illustrates:



24.     Unsurprisingly, consumers believe Glycinate is superior to Oxide. This is demonstrated by numerous blog posts espousing Glycinate over Oxide. For example, in an online forum with a blog post entitled "Bulletproof Magnesium Thread," a member wrote: "Magnesium Glycinate – The most bioavailable form of Magnesium …… Least likely to cause loose stools" and "Magnesium Oxide – VERY POORLY ABSORBED – out of 400 mg only AT MOST 80 mg of magnesium absorbed by the body. The worst form of magnesium. " In another blog post on MedHelp.org, a member wrote that Glycinate is one of the best forms of magnesium and that "Chelated magnesium [which includes Glycinate] is far better absorbed than magnesium oxide."

25.     In part due to this increased consumer awareness and demand for Glycinate, Glycinate is significantly more expensive than Oxide. As noted by the Huffington Post, Oxide is one of "the cheapest and most common forms [of magnesium] found in supplements."[8] For example, Solaray, a supplement retailer, offers Glycinate for $12.98 per bottle, which contains 120 capsules and 400 milligrams ("mgs") per serving (where each serving is four capsules).

8. http://www.huffingtonpost.com/dr-mark-hyman/magnesium-the-most-powerf_b_425499.html ("Avoid magnesium carbonate, sulfate, gluconate, and oxide. They are poorly absorbed (and the cheapest and most common forms found in supplements).").

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    This computes to $0.11/capsule or $0.001/mg.  By contrast, Nature Made, another supplement

2    retailer, offers Oxide for $2.97 per bottle, which contains 100 capsules and 250 mg per serving

3    (where each serving is one capsule).  This calculates to $0.03/capsule or $0.0001/mg.

4    Therefore, as between these two retailers, Glycinate costs *ten times* more per mg than Oxide.

5           26.     In addition to increased consumer demand, Glycinate is also more expensive

6    because it is more costly to manufacture.  Glycinate is a "chelated" form of magnesium, which

7    means it is combined with another substance to increase absorption and bioavailability.  To

8    chelate its Glycinate, Albion uses a six-stage chelation process described in a promotional

9    video on Albion's homepage.[9]  The machinery and expertise required to manufacture Glycinate

10   are very expensive.  Oxide is not chelated, and is therefore far less costly to manufacture.

11          27.     To reduce these costs while maintaining consumer demand, Albion blended

12   Oxide with Glycinate, in some cases did not inform its re-sellers that it had done so.  Albion's

13   Product Data Sheet[10] lists Glycinate and Oxide as ingredients.  Yet the labeling on Defendants'

14   final products—labeling that is orchestrated and controlled by Albion—lists Glycinate, but

15   entirely omits Oxide, as follows:

16

17   

18

19

20

21

22

23

24

25   _____

26   9. http://www.albionminerals.com/

27   10. *See* Exhibit "A," attached hereto.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com



28.     Such deceptive labeling leads a reasonable consumer to believe that the Blended Product is Glycinate, when in fact it is blended with an inferior form of magnesium, Oxide.

29.     Like other members of the Class, Plaintiff purchased the Blended Products believing them to have the qualities she sought (pure Glycinate), based on the unlawful and deceptive misrepresentations of Defendants.

30.     Instead of receiving a product that has the advantages of pure Glycinate, Plaintiff and members of the Class received Blended Products containing both Glycinate and the inferior Oxide.

31.     The Blended Products were worth less than what Plaintiff and members of the Class paid for them, and Plaintiff and members of the Class lost monies as a result of Defendants' deception, in that they did not receive what they paid for.

32.     Defendants therefore earn a substantial additional profit by knowingly and intentionally misleading consumers into believing that the Blended Products are pure Glycinate.

33.     Moreover, Defendants' deceptive labeling practice defies the FDA's explicit instructions.  A federal regulation, 21 C.F.R. § 101.36, covers nutrition labeling of dietary supplements and provides that "the label of a dietary supplement that is offered for sale shall bear nutrition labeling in accordance with this regulation unless an exemption is provided for the product in paragraph (h) of this section."  21 C.F.R. § 101.36(a).  Defendants are not exempt under 21 C.F.R. § 101.36(h)(3).

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

34.     Defendants must abide by the labeling requirements set forth in 21 C.F.R. § 101.36.  Specifically, Section 101.36(b)(2) applies to dietary ingredients and its subcomponents that have a "Reference Daily Intake" or "Daily Reference Value" under Section 101.9(c). Magnesium's daily reference value is readily available online:

| AGE | MALE | FEMALE |
|-----|------|--------|
| 1–3 | 80 mg | 80 mg |
| 4–8 | 130 mg | 130 mg |
| 9–13 | 240 mg | 240 mg |
| 14–18 | 410 mg | 360 mg (400 mg during pregnancy) |
| 19–30 | 400 mg | 310 mg (350 mg during pregnancy) |
| 31+ | 420 mg | 320 mg |

Section 101.9(c)(8)(iv) also includes magnesium as one of the minerals that is "essential" to human nutrition, and magnesium is explicitly referenced in Section 101.36(b)(2)(B).  Section 101.36(b)(2) therefore applies to Defendants, and requires such magnesium to be declared "when [it is] added to the product for purposes of supplementation, or when a claim is made about [it]."  Because Oxide is added to the Blended Product for purposes of supplementation and claims are made about its nutrient content and health, the Oxide in the Blended Products must be declared.

35.     Although Defendants list magnesium, they only list Glycinate, and not Oxide. This violates Section 101.36(d), which requires "source ingredients" to be disclosed either in the nutrition label or "outside and immediately below the nutrition label."  Further, "[w]hen source ingredients are listed within the nutrition label, and two or more are used to provide a single dietary ingredient, all of the sources shall be listed within the parentheses in descending order by weight."  21 C.F.R. § 101.36(d)(2).

36.     Glycinate and Oxide are source ingredients.  Therefore, not only must Defendants disclose the Oxide contained in the Blended Product, they must also list the

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

respective weights, in terms of milligrams, of the Glycinate and Oxide.  Dietary Supplement Health and Education Act of 1994, Pub. L. No. 103–417, § 7, 108 Stat. 4325 (1994) (codified as 21 U.S.C. § 343(q)(5)(F)).

37.     Even if the Blended Products were deemed a "proprietary blend," pursuant to Section 101.36(c)(2), each ingredient must nevertheless be listed in descending order of predominance by weight, in accordance with Section 101.36(b)(3).  Thus, Defendants may not circumvent the FDA's disclosure requirements by simply calling the Blended Products "proprietary"; nor can Defendants circumvent state consumer protection law by falsely representing the Blended Products.  In fact, Albion must be aware of this disclosure requirement, as it discloses all of the ingredients of a proprietary blend contained in a prostate health supplement called Natural Prostate Health, for which Albion supplies some of the underlying ingredients, as the following image of Natural Prostate Health's Supplement Facts panel illustrates[11]:

| Supplement Facts | | |
|---|---|---|
| Serving Size: 2 Capsules | | |
| Servings Per Container: 30 | | |
| | Amount Per Serving | % DV* |
| Zinc | 15 mg | 100% |
| Selenium | 25 mcg | 36% |
| Proprietary Blend | 2,000 mg | † |
| Saw Palmetto Fruit Extract | | |
| Beta-Sitosterol with Phytosterols | | |
| Pygeum Africanum Bark Extract | | |
| Cranberry Extract | | |
| Stinging Nettle Root Extract | | |
| Grape Seed Extract | | |
| Evening Primrose Seed Oil (for GLA, ALA, PLA) | | |
| Pumpkin Seed Oil | | |
| * Percent Daily Value (DV) is based on a 2000 calorie diet. | | |
| † Daily Value not established. | | |

11. http://shop.enivausa.com/487786/en-us/product.aspx?id=26005.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  Defendants therefore knowingly and intentionally hide the fact that the Blended Products

2  contain Oxide so they can turn an additional profit at the consumer's expense.

3         38.     Plaintiff conducted additional research on the Blended Products and discovered

4  that Swanson Health Products was the only company that discloses the fact that its similar

5  product contains Oxide, and only in the "other ingredients" section below the more prominent

6  Supplement Facts panel, which lists Glycinate.  *See* Swanson Ultra Albion Chelated

7  Magnesium Glycinate Supplement Facts below:

8

## Supplement Facts

9
   Serving Size 1 Capsule
10

11

|  | Amount Per Serving | % Daily Value |
|---|---|---|
| Magnesium (from TRAACS®magnesium glycinate chelate buffered) | 133 mg | 33% |

14

   Other ingredients:  Gelatin, magnesium oxide, citric acid, maltodextrin, may contain one or more of the
15  following:  microcrystalline cellulose (plant fiber), magnesium stearate, silica.

16         39.     Pursuant to an agreement with its re-sellers, Albion was able to control, and did

17  in fact control, the nature and content of the Blended Products' label.  Indeed, Albion dictates

18  the labeling to its re-sellers by way of a "Trademark and Patent Number License Agreement."[12]

19         40.     Integrated Supplements, an Albion re-seller which purchased the Blended

20  Product from Albion and sold it to the public as Integrated Supplements Bio-Available

21  Magnesium, stated:

22         "* * * Where we source our raw materials from Albion Nutrition
           (and are proud to do so), we label all ingredients in strict
23         accordance with the requirements legally set forth by Albion
           Nutrition. If we didn't label our product exactly as Albion
24

25

26  ───────────────
    12. *See* Exhibit "B," attached hereto.
27

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    dictates, we simply couldn't advertise the fact that we use their
     ingredients."[13]

2

3    41.    In the comments section of a review of Integrated Supplements Bio-Available

4    Magnesium, Integrated Supplement's representative stated:

5         "I stated previously, I cannot speak for other companies (or
          speculate as to the reasons for their actions), but I will, again,
6         speak the truth.   Albion, did review, direct, and approve the
          current content of our label, with instructions to label the
7         ingredient in question as TRAACS® Magnesium Glycinate
          Chelate Buffered.   There is also a contract in place between us
8         which governs all Albion trademarks and descriptions.  I am not
          "hiding behind them" or "shifting the blame."  These are simply
9         the facts (for which I have documentation).  Where we labeled
          the ingredient exactly as they stated, and exactly as many (but
10        perhaps not all) other brands do, there was never any attempt
          whatsoever to mislead.  They are the trademark holder on the
11        ingredient, so I think it was reasonable of us to assume that the
          descriptions they instructed us to use were legally allowed
12        (especially considering the numerous other brands that used the
          same ingredient, and labeled it the exact same way).  Again, if
13        this proves to be an incorrect assumption, we, with Albion, will
          rectify it.
14

15        If changes are required, they won't just affect us, but MANY
          products which contain the ingredient.  If you truly want to bring
16        about change in this area, we're small potatoes – I'd recommend
          you go right to the source and try and appeal to Albion,
17        themselves.  Again, I stand behind everything I've said regarding
          Albion.   I have the email correspondences and contracts to
18        support my statements regarding their labeling requirements, and
          more importantly, I want to reiterate, again, that we proudly use
19        their ingredients. * * *"[14]

20

21

22

23

24
_____
25   13.    See Exhibit "C," attached hereto.
     14.    *See*
26   http://www.amazon.com/review/R31ZRZQWOWX7V0/ref=cm_cd_pg_pg2?ie=UTF8&asin=B003OETP6O&cdF
     orum=Fx3VV3F9TK53FX7&cdPage=2&cdThread=Tx1IUG45A0HOCEY&store=hpc#wasThisHelpful.http://ww
27   w.amazon.com/review/R31ZRZQWOWX7V0/ref=cm_cr_pr_perm?ie=UTF8&ASIN=B003OETP6O.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

42.     Another Albion re-seller, Nuvari Life, acknowledged that Oxide should have been listed as an ingredient in its Blended Product and apologized for the mislabeling.  Nuvari Life, a re-seller of Nuvari Magnesium Ultra, stated on its product page on Amazon:

> "We have conducted further research into this matter and have spoken further with our supplier and Albion.  It appears that our supplier failed to list the following other ingredients in the supplement facts provided for our label:  magnesium oxide, citric acid, maltodextrin, silica.  These ingredients are part of the formula manufactured by Albion.  They are not added in afterwards by our supplier.  Nevertheless, it is required that they appear in the ingredients.  We are very disappointed to learn that our labeling is incorrect.  We will be closing our Amazon listing this week in order to have our product relabeled and the ingredients listed properly."[15]

43.     It is therefore apparent that Albion exercises direction and control over the Blended Product's labeling, and either explicitly or implicitly instructs its re-sellers not to disclose Oxide.

44.     Such deceptive labeling leads a reasonable consumer to believe that the Blended Products are pure Glycinate, when in fact they are blended with an inferior form of magnesium. Like other members of the Class, Plaintiff purchased the Blended Products believing them to have the qualities she sought (pure Glycinate), based on the unlawful and deceptive misrepresentations of Defendants.  Instead of receiving the Blended Products that had the advantages of pure Glycinate, Plaintiff and members of the Class received a product containing both Glycinate and the inferior Oxide.  Defendants' Blended Products were worth less than what Plaintiff and members of the Class paid for them, and Plaintiff and members of the Class lost monies as a result of Defendants' deception in that they did not receive what they paid for. Defendants therefore earn a substantial additional profit by knowingly and intentionally misleading consumers into believing that the Blended Products are pure Glycinate.

---

15.     *See* Exhibit "D," attached hereto.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

45.     Notwithstanding Albion's directives to its re-sellers, Defendant re-sellers are required to abide by the FDA regulations set forth above, and to not circumvent state consumer protection laws.  Defendant re-sellers could and should have resisted Albion's instructions by either listing Oxide as an ingredient on the Supplement Facts Panel, or refusing to purchase from Albion the Blended Products.

46.     Defendant re-sellers therefore cannot claim innocence; by only listing "Magnesium Glycinate" as an ingredient on the Supplement Facts panel and failing to disclose Oxide as an ingredient, Defendant re-sellers were able to charge an unwarranted price premium for an adulterated product.

47.     In or about April 2014, Albion was made aware that claims were made in other class action lawsuits that the labeling by Albion and its re-sellers of the Blended Product violated the law.

48.     In response, in or about July 2014, Albion notified its re-sellers who were selling Albion's Blended Product as follows:

> "You are receiving this letter because our records indicate that you have recently purchased Magnesium Bisglycinate Chelate Buffered (Product Number 3451) from Albion.  Albion's Product Data Sheet, which accompanies this letter, indicates the presence of magnesium oxide in this ingredient.  Magnesium oxide is, of course, the buffering agent in this buffered product.
>
> Albion has recently received some inquiries about our customers having not disclosed the presence of magnesium oxide on their labels.  While Albion does not control your product labels and you are solely responsible for the compliance of your product labels with FDA Regulation, *Albion's position is that magnesium oxide should be disclosed on the labels of products which incorporate Albion's Magnesium Bisglycinate Chelate Buffered ingredient*.  Albion encourages you to carefully consider FDA Regulations found in the Code of Federal Regulations, and all other applicable laws and regulations, and to obtain reliable legal

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

guidance, in determining how to label your products." [Emphasis added.][16]

49.     Consequently, Albion not only concedes, but advocates, that Oxide should have been disclosed on the labels of the Blended Products.

## V.  CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action on her own behalf and, pursuant to Federal Rule of Civil Procedure 23, on behalf of a class and various subclasses as pled below of all persons who, during the period from 2011 through the present, purchased the Blended Products (the "Class").  Excluded from the Class are Defendants and any parent, subsidiary, or affiliate of Defendants.

51.     Plaintiff brings this action as a class action for the following reasons:

a.      The Class consists of tens of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.      There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

i.      Whether Defendants violated the provisions of law set forth in the causes of action below;

ii.     The wholesale and retail prices of the Blended Products, Glycinate and Oxide;

iii.    The cost of manufacturing the Blended Products, Glycinate, and Oxide;

iv.     Whether a reasonable consumer would believe that the Blended Products contain Glycinate without Oxide;

---

16.     *See* Exhibit "E," attached hereto.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

v.    Whether Albion required Defendant re-sellers to include Glycinate, and to exclude Oxide, from the Blended Products' labeling;

vi.    Whether Defendants knew the Blended Products were mislabeled;

vii.    Whether Defendants knowingly deceived consumers;

viii.    Whether Defendants intentionally deceived consumers;

ix.    Whether Defendants' labeling and pricing scheme constitutes an unfair method of competition;

x.    Whether Defendants' labeling and pricing scheme is an unconscionable act or practice;

xi.    Whether Defendants' labeling and pricing scheme is an unfair or deceptive act or practice;

xii.    Whether Defendants have been unjustly enriched by their labeling and pricing scheme;

xiii.    Whether Defendants should be enjoined from continuing their labeling and pricing scheme;

c.    The Claims asserted by Plaintiff are typical of the claims of the members of the Class;

d.    Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class action and complex litigation, including class action litigation involving state statutes protecting consumers from deceptive and unfair trade practices;

e.    Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    class members that would establish incompatible standards of conduct

2    for Defendants;

3    f.    Defendants have acted on grounds that apply generally to the Class, *i.e.*,

4          mislabeling and charging an unjustifiable price premium for the Blended

5          Product, so that final injunctive relief prohibiting Defendants from

6          continuing their unfair and deceptive practice is appropriate with respect

7          to the Class as a whole; and

8    g.    A class action is superior to other available methods for the fair and

9          efficient adjudication of the controversy, for at least the following

10         reasons:

11         i.    Absent a class action, Class members as a practical matter will be

12               unable to obtain redress; Defendants' violations will continue

13               without remedy; additional consumers will be harmed; and

14               Defendants will continue to reap and retain their ill-gotten gains;

15         ii.   It would be a substantial hardship for most individual members of

16               the Class if they were forced to prosecute individual actions;

17         iii.  When the liability of Defendants has been adjudicated, the Court

18               will be able to determine the claims of all members of the Class;

19         iv.   A class action will permit an orderly and expeditious

20               administration of Class claims and foster economies of time,

21               effort, and expense;

22         v.    This lawsuit presents no difficulties that would impede its

23               management by the Court as a class action; and

24         vi.   Defendants have acted on grounds generally applicable to Class

25               members, making Class-wide monetary and injunctive relief

26               appropriate.

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## VI.  FIRST CAUSE OF ACTION

**(Violation of the Washington Consumer Protection Act,
RCW § 19.86 *et seq*. – Non-Per Se Deceptive Business Practices)**

**(On behalf of Plaintiff and members of the Nationwide Class Against Defendant Seeking
Health, LLC Only)**

52.     Plaintiff repeats and re-alleges the allegations contained above as if fully set
forth herein.

53.     The Washington Consumer Protection Act declares unlawful (i) an unfair or
deceptive act or practice, (ii) occurring in trade or commerce, (iii) with a public interest impact,
and (iv) which causes injury to consumers.

54.     Seeking Health is a "person" within the meaning of the Washington Consumer
Protection Act, RCW 19.86010(1), and conducts "trade" and "commerce" within the meaning
of the Washington Consumer Protection Act, RCW 19.86.010(2).

55.     Plaintiff and the other Class members are "persons" within the meaning of the
Washington Consumer Protection Act, RCW 19.86.010(1).

56.     At all relevant times, Seeking Health engaged deceptive acts or practices in the
conduct of its business by omitting statements of material fact regarding the Blended Products'
ingredients, performance characteristics and benefits that it did not have and charged a price
premium for an inferior product.  Specifically, Seeking Health failed to disclose that the
Blended Products contained Oxide, an inferior form of magnesium, and therefore were not pure
Glycinate.

57.     Seeking Health's deceptive acts or practices have occurred in its trade or
business and were and are capable of deceiving a substantial portion of the public.  As such,
Seeking Health's general course of conduct as alleged herein is injurious to the public interest,
and the acts complained of herein are ongoing and/or have a substantial likelihood of being
repeated.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

58.     The facts concealed from Plaintiff and the Class are material in that a reasonable consumer considered the Blended Products' ingredients, performance characteristics and benefits that were represented in making their purchase decision and paid a price premium for such.

59.     As a direct and proximate result of Seeking Health's deceptive acts or practices, Plaintiff and Class members suffered injury in fact.  As a result of Seeking Health's deceptive practices, Plaintiff and Class members were overcharged for the Blended Product and thus lost money.

60.     Plaintiff and the Class are therefore entitled to an order enjoining the conduct complained herein; actual damages; treble damages pursuant to RCW 19.86.090; costs of suit, including a reasonable attorney's fee; and such further relief as the Court may deem proper.

61.     Plaintiff and the Class are also entitled to equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of the Class members, or all or part of the ill-gotten profits Seeking Health received from the sale of the Blended Products.

## VII.  SECOND CAUSE OF ACTION

**(Violation of the Washington Consumer Protection Act, RCW § 19.86 et seq. – Non-Per Se Unfair Business Practices)**

**(On behalf of Plaintiff and members of the Nationwide Class Against Defendant Seeking Health, LLC Only)**

62.     Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

63.     Seeking Health is a "person" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1), and conducts "trade" and "commerce" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(2).

64.     Plaintiff and other Class members are "persons" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1).

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

65.     Seeking Health engaged in unfair acts or practices of its business by omitting statements of material fact regarding the Blended Products' ingredients, performance characteristics and benefits that it did not have and charged a price premium for an inferior product. Seeking Health failed to disclose that the Blended Products contained Oxide, an inferior form of magnesium, and therefore were not pure Glycinate.

66.     Seeking Health's failure to disclose the true nature of the Blended Products is unfair because these acts or practices offend public policy as it has been established by statutes, regulations, the common law or otherwise.

67.     Seeking Health's failure to disclose the true nature of the Blended Products is unfair because this act or practice (1) causes substantial financial injury to Plaintiff and Class members; (2) is not outweighed by any countervailing benefits to consumers or competitors; and (3) is not reasonably avoidable by consumers.

68.     Seeking Health's uniform practice of failing to disclose the true nature of the Blended Products and charging a price premium for an inferior product is unfair because this act or practice is immoral, unethical, oppressive and/or unscrupulous.

69.     Seeking Health's failure to disclose the true nature of the Blended Products and charging a price premium for an inferior product is unfair because these acts or practices offend public policy as it has been established by statues, regulations, the common law or otherwise.

70.     Seeking Health's uniform practice of failing to disclose the true nature of the Blended Products and charging a price premium for an inferior product is unfair because this act or practice (1) causes substantial financial injury to Plaintiff and Class members; (2) is not outweighed by any countervailing benefits to consumers or competitors; and (3) is not reasonably avoidable by consumers.

71.     Seeking Health's uniform practice of failing to disclose the true nature of the Blended Products and charging a price premium for an inferior product is unfair because this act or practice is immoral, unethical, oppressive and/or unscrupulous.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

72.     Seeking Health's unfair acts or practices have occurred in its trade or business and were and are capable of injuring a substantial portion of the public.  As such, Seeking Health's general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

73.     As a direct and proximate result of Seeking Health's unfair and deceptive acts and practices in the conduct of its business, Plaintiff and the Class members have suffered injury in fact.  As a result of Seeking Health's unfair practices, Plaintiff and the Class members were charged a price premium for an inferior Product and lost monies as a result of Seeking Health's deception in that they did not receive what they paid for.

74.     Plaintiff and the Class are therefore entitled to an order enjoining the conduct complained of herein; actual damages; treble damages pursuant to RCW 19.86.909; costs of suit, including a reasonable attorney's fee; and such further relief as the Court may deem proper.

75.     Plaintiff and the Class are also entitled to equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of the Class members, of all or part of the ill-gotten profits Seeking Health received from the sale of the Blended Products.

## VIII.  THIRD CAUSE OF ACTION

### (Violations of CUTPA - Conn. Gen. Stat. § 42-110a, *et seq.*)

**(On behalf of Plaintiff and members of the Nationwide Class Against Defendant Designs for Health, Inc. Only)**

76.     Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

77.     Plaintiff and members of the proposed Class are consumers within the meaning of CUTPA, and the Blended Products are goods within the meaning of the CUTPA.

78.     Designs for Health, through its conduct, is engaged in trade or commerce within the meaning of the CUTPA, and the purchase of the Blended Products by Plaintiff and other

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    members of the proposed Class constitutes consumer transactions within the meaning of the

2    CUTPA.

3         79.     By engaging in the foregoing conduct, Designs for Health committed unfair and

4    deceptive acts or practices in the conduct of trade or commerce in violation of CUTPA, and

5    particularly, but without limitation, Designs for Health engaged in unfair and deceptive acts

6    and practices by and through the following acts and omissions:

7              a.    Designs for Health made false and/or misleading statements of material

8                   fact regarding the Blended Products, which statements were likely to

9                   deceive the public;

10             b.    Designs for Health omitted and concealed material facts regarding the

11                  Blended Products from Plaintiff and the Class regarding the Blended

12                  Products; and

13             c.    Designs for Health knew, or were reckless in not knowing, that its

14                  statements about the content of the Blended Products, were false and/or

15                  misleading.

16        80.     Designs for Health knew or should have known that these acts and omissions

17   violated CUTPA, as they were and are violative of public policy, unfair, unethical, oppressive,

18   and unscrupulous and caused substantial injury to consumers, including Plaintiff and other

19   members of the proposed Class.

20        81.     Designs for Health used or employed these acts or practices in willful or

21   knowing violation of CUPTA.

22        82.     As a result of the unfair and deceptive conduct of Designs for Health, Plaintiff

23   and members of the proposed Class have suffered ascertainable losses within the meaning of

24   Conn. Gen. Stat. § 42-110g(a).  Plaintiff and members of the Class have suffered injury in fact,

25   loss of money or property in the form of, *inter alia*, monies spent to purchase the Blended

26   Products, or the premium paid for the Blended Products, and otherwise have been damaged.

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

83.     Plaintiff and members of the proposed Class are entitled to compensatory damages from Designs for Health for the economic and non-economic damages identified herein, together with equitable and declaratory relief and other appropriate damages, including punitive damages, attorneys' fees, and costs of suit

84.     Designs for Health's labeling and pricing scheme constitutes a deceptive act because it is a representation, omission, or practice that that is likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment.  Designs for Health represents that the Blended Products contain Glycinate but omit the fact that it also contains Oxide.  This mislabeling practice is likely to mislead a consumer acting reasonably under the circumstances into believing that the Blended Products are pure Glycinate.  As a result of this reasonable but erroneous belief, tens of thousands of consumers have paid and continue to pay an unjustified price premium for Designs for Health's Blended Products.

85.     Designs for Health's labeling and pricing scheme constitutes an unfair practice because it offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  By representing that the Blended Products contained pure Glycinate without Oxide, Designs for Health charged an immoral, unethical, oppressive, and unscrupulous price premium that is substantially injurious to consumers.

86.     As a direct and proximate result of Designs for Health deceptive acts and unfair practices, Plaintiff and the Class paid a price premium for an inferior product.  It was reasonably foreseeable that the Blended Products labels would lead a reasonable consumer to believe that the Blended Products contained pure Glycinate, and that such a consumer would unknowingly pay a price premium for the Blended Products even though they are less expensive to manufacture, have a greater laxative effect, and have lower bioavailability than pure Glycinate.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

COMPLAINT – CLASS ACTION - 24

87.     Consumers suffered actual damages because they paid the fair market price for pure Glycinate when the Blended Products they purchased contained both Glycinate and Oxide, the latter of which is a less expensive and inferior form of magnesium.

88.     The above-described deceptive acts and unfair practices by Designs for Health present an ongoing threat to the Class.  Plaintiff is informed and believes and thereon alleges that Designs for Health has systematically perpetrated deceptive acts and unfair practices upon members of the public and have knowingly and intentionally misled Plaintiff and members of the Class.

## IX.  FOURTH CAUSE OF ACTION

**(Breach of Express Warranty through Connecticut Product Liability Act)**

**(On behalf of Plaintiff and members of the Nationwide Class Against Defendant Designs for Health, Inc. Only)**

89.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

90.     Plaintiff brings this claim on behalf of herself and on behalf of the Class members for breach of express warranty under the common law of the State of Connecticut.

91.     Designs for Health is a "product seller" as defined in Conn. Gen. Stat. § 52-572m(a) and, as a result of Designs for Health's actions alleged herein, Plaintiff and the Class members suffered "harm" as defined in Conn. Gen. Stat. § 52-572m(d).  Designs for Health provided Plaintiff and the Class members with express warranties, including but not limited to warranties that the Blended Products contained only Glycinate, as set forth above.

92.     Designs for Health breached these warranties by providing Blended Products that contained both Glycinate and the significantly inferior, cheaper Oxide, and that otherwise failed to conform to Designs for Health's express warranties.  This breach resulted in damages to Plaintiff and the Class members, who bought Designs for Health's Blended Products but did not receive the goods as warranted, in that the Blended Products did not contain only Glycinate

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    as represented but instead, contained both Glycinate and the significantly inferior, cheaper

2    Oxide.

3          93.      As a proximate result of Designs for Health's breach of warranties, Plaintiff and

4    the Class members have suffered damages in an amount to be determined by the Court and/or

5    jury, in that, among other things, they purchased and paid for Blended Products that did not

6    conform to what Designs for Health promised in the Blended Products' promotion, marketing,

7    advertising, packaging, and labeling Plaintiff and the Class members were deprived of the

8    benefit of their bargain and spent money on Blended Products that did not have any value or

9    had less value than warranted and/or purchased the Blended Products that they would not have

10   otherwise purchased and used had they known the true facts about them.

11        94.      Designs for Health expressly warranted its goods to the ultimate consumers and

12   the express warranties were the basis of the bargain.  Designs for Health's warranty was

13   expressly disclosed to Plaintiff and the Class members on the Blended Products' packaging and

14   in advertisements and promotional materials for the Blended Products.  In fact, Designs for

15   Health actively promoted the premium nature of the Blended Products' ingredients.

16        95.      Plaintiff and the Class members purchased the Blended Products based upon the

17   above said express warranties.  Plaintiff and the Class members relied on the truthfulness of the

18   express warranties asserted by Designs for Health in deciding to purchase Designs for Health's

19   Blended Products.  Therefore, Plaintiff seeks damages and relief for Designs for Health's

20   Breach of Express Warranty.

21                                **X.  FIFTH CAUSE OF ACTION**

22         **(Violation of the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq.*)**
                                 **(Deceptive Acts or Practices by Suppliers)**
23

24     **(On behalf of Plaintiff and members of the Nationwide Class Against Defendant Albion**
                                    **Laboratories, Inc. Only)**

25

26        96.      Plaintiff repeats and re-alleges the allegations contained in the paragraphs above

    as if fully set forth herein.

27

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

97.     Plaintiff brings this claim against Albion, only, on behalf of herself and on behalf of the Class members, for violation of the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq.* (the "UCSPA").  Specifically, this claim alleges Albion violated several provisions of Utah Code section 13-11-4 by engaging in deceptive acts or practices.

98.     Under the UCSPA, "person" means "an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, association, cooperative, or any other legal entity."  Utah Code § 13-11-3(5).

99.     Plaintiff, the Class members, and Albion are "persons" as the UCSPA defines that term because Plaintiff and each of the Class members are individuals and Albion is a corporation, as set forth above.

100.    Under the UCSPA, "consumer transaction" means, *inter alia*, "a sale . . . of goods . . . to, or apparently to, a person for: (i) primarily personal, family, or household purposes[.]"  *Id.* § 13-11-3(2)(a).

101.    Plaintiff and the Class members, on the one hand, and Albion on the other, engaged in "consumer transactions" as the UCSPA defines that term because Plaintiff and the Class members bought the Blended Products primarily for personal, family, or household purposes.

102.    Under the UCSPA, "supplier" means "a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer."  *Id.* § 13-11-3(6).

103.    Albion is a "supplier" as the UCSPA defines that term because it is a seller or other person who regularly solicits, engages in, or enforces "consumer transactions," as the UCSPA defines that term.

104.    Under the UCSPA:

> "[A] supplier commits a deceptive act or practice if the supplier knowingly or intentionally:

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

(a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not;

(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not;

* * * * *

(e) indicates that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not; [or]\

(j) . . . (ii) fails to honor a warranty or a particular warranty term[.]"

*Id.* § 13-11-4(2)(a), (b), (e), (j)(ii).

105.    As fully alleged above, Albion has engaged, and Albion continues to engage, in deceptive acts or practices in violation of Utah Code section 13-11-4(2)(a) because: (i) the Blended Products were the subject of consumer transactions between Plaintiff and the Class members and Albion, (ii) Albion represented that the Blended Products had performance characteristics and benefits that they did not have, since Albion labeled, marketed, and sold the Blended Products as containing only magnesium Glycinate when, in fact, the Blended Products contained a blend of Glycinate and Oxide (which is significantly inferior to and cheaper than Glycinate), and (iii) Albion knew or should have known that the Blended Products did not, in fact, contain only Glycinate and, instead, contained a blend of Glycinate and an inferior, cheaper ingredient, Oxide.

106.    As fully alleged above, Albion has engaged, and Albion continues to engage, in deceptive acts and practices in violation of Utah Code section 13-11-4(2)(b) because: (i) the Blended Products were the subject of consumer transactions between Plaintiff and the Class members and Albion, (ii) Albion represented that the Blended Products were of a particular standard, quality, or grade when they were not, since Albion labeled, marketed, and sold the Blended Products as containing only Glycinate when, in fact, the Blended Products contained a

COMPLAINT – CLASS ACTION - 28

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   blend of Glycinate and Oxide (which is significantly inferior to and cheaper than Glycinate),

2   and (iii) Albion knew or should have known that the Blended Products did not, in fact, contain

3   only Glycinate and, instead, contained a blend of Glycinate and an inferior, cheaper ingredient,

4   Oxide.

5          107.    As fully alleged above, Albion has engaged, and Albion continues to engage, in

6   deceptive acts and practices in violation of Utah Code section 13-11-4(2)(e) because: (i) the

7   Blended Products were the subject of consumer transactions between Plaintiff and the Class

8   members and Albion, (ii) Albion represented that the Blended Products were supplied in

9   accordance with a previous representation when they were not, since Albion labeled, marketed,

10  and sold the Blended Products as containing only magnesium Glycinate when, in fact, the

11  Blended Products contained a blend of Glycinate and Oxide (which is significantly inferior to

12  and cheaper than Glycinate), and (iii) Albion knew or should have known that the Blended

13  Products did not, in fact, contain only Glycinate and, instead, contained a blend of magnesium

14  Glycinate and an inferior, cheaper ingredient, magnesium Oxide.

15         108.    As fully alleged above, Albion has engaged, and Albion continues to engage, in

16  deceptive acts and practices in violation of Utah Code section 13-11-4(2)(j)(ii) because: (i) in

17  labeling, marketing, and selling the Blended Products to Plaintiff and the Class members,

18  Albion warranted that the Blended Products contained only magnesium Glycinate, yet failed to

19  honor that warranty because the Blended Products in fact contained a blend of Glycinate and

20  Oxide (which is significantly inferior to and cheaper than Glycinate), and (ii) Albion knew or

21  should have known that the Blended Products did not, in fact, contain only Glycinate and,

22  instead, contained a blend of magnesium Glycinate and an inferior, cheaper ingredient, Oxide.

23         109.    As a direct and proximate result of Albion's improper conduct, Plaintiff and the

24  other members of the Class have suffered damages and ascertainable losses of moneys and/or

25  property in amounts to be determined by the Court or jury, by paying more for the Blended

26  Products than they would have, and/or by purchasing the Blended Products when they would

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   not have done so, had Albion not misrepresented the qualities of the Blended Products as set

2   forth herein.

3       110.    Plaintiff and the Class members seek relief to the fullest extent allowable under

4   Utah Code section 13-11-19, including but not limited to:  a declaratory judgment under section

5   13-11-19(1)(a); an injunction under section 13-11-19(1)(b); and actual damages or $2,000,

6   whichever is greater, plus court costs under section 13-11-19(2).

7       111.    Therefore, Plaintiff seeks relief as set forth below.

## XI.  SIXTH CAUSE OF ACTION

**(Violation of the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq.*)**
**(Unconscionable Acts or Practices by Suppliers)**

**(On behalf of Plaintiff and members of the Nationwide Class Against Defendant Albion
Laboratories, Inc. Only)**

12      112.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above

13  as if fully set forth herein.

14      113.    Plaintiff brings this claim against Albion, only, on behalf of herself and on

15  behalf of the Class members, for violation of the Utah Consumer Sales Practices Act, Utah

16  Code § 13-11-1 *et seq.* (the "UCSPA").  Specifically, this claim alleges Albion violated several

17  provisions of Utah Code section 13-11-5 by engaging in unconscionable acts or practices.

18      114.    As alleged above, Plaintiff, the Class members, and Albion are "persons" as the

19  UCSPA defines that term.

20      115.    As alleged above, Plaintiff and the Class members, on the one hand, and Albion,

21  on the other, engaged in "consumer transactions" as the UCSPA defines that term.

22      116.    As alleged above, Albion is a "supplier" as the UCSPA defines that term.

23      117.    Under the UCSPA:

> An unconscionable act or practice by a supplier in connection
> with a consumer transaction violates this act whether it occurs
> before, during, or after the transaction.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   Utah Code § 13-11-5(1).

2        118.    As fully alleged above, Albion has engaged, and Albion continues to engage, in

3   unconscionable acts or practices in violation of Utah Code section 13-11-5 because: (i) the

4   Blended Products were the subject of consumer transactions between Plaintiff and the Class

5   members and Albion, (ii) Albion labeled, packaged, advertised, marketed, and sold the Blended

6   Products to Plaintiff and the Class members using representations that the Blended Products

7   contained only Glycinate when, in fact, the Blended Products contained a blend of Glycinate

8   and Oxide (which is significantly inferior to and cheaper than Glycinate), and thereby Albion

9   engaged in practices that constitute deception, fraud, false pretense, false promise,

10   misrepresentation, unfair practice, and/or concealment, suppression, or omission of material

11   facts in connection with the sale or advertisement of the Blended Products in trade or

12   commerce, and (iii) Albion knew or should have known that the Blended Products did not, in

13   fact, contain only Glycinate and, instead, contained a blend of magnesium Glycinate and an

14   inferior, cheaper ingredient, magnesium Oxide.

15        119.    As a direct and proximate result of Albion's improper conduct, Plaintiff and the

16   other members of the Class have suffered damages and ascertainable losses of moneys and/or

17   property in amounts to be determined by the Court or jury, by paying more for the Blended

18   Products than they would have, and/or by purchasing the Blended Products when they would

19   not have done so, had Albion not misrepresented the qualities of the Blended Products as set

20   forth herein.

21        120.    Plaintiff and the Class members seek relief to the fullest extent allowable under

22   Utah Code section 13-11-19, including but not limited to:  a declaratory judgment under section

23   13-11-19(1)(a); an injunction under section 13-11-19(1)(b); and actual damages or $2,000,

24   whichever is greater, plus court costs under section 13-11-19(2).

25        121.    Therefore, Plaintiff seeks relief as set forth below.

26

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

COMPLAINT – CLASS ACTION - 31

## XII.  SEVENTH CAUSE OF ACTION

### (Unjust Enrichment)

**(On behalf of Plaintiff and members of the Nationwide Class Against all Defendants)**

122.    Plaintiff repeats and re-alleges the allegations contained in above as if fully set forth herein.

123.    By deceiving consumers into paying more for a less expensive and inferior product, Defendants have unjustly enriched themselves at the expense of Plaintiff and the Class.  Defendants are therefore required in equity and good conscience to compensate Plaintiff and members of the Class for the damages they have suffered as a result of Defendants' inequitable conduct.

124.    By reason of the foregoing, Defendants are liable to Plaintiff and the Class for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## XIII.  EIGHTH CAUSE OF ACTION

### (Fraudulent Concealment)

(On behalf of Plaintiff and the members of the Nationwide Class Against all Defendants)

125.    Plaintiff repeats and re-alleges the allegations contained in above as if fully set forth herein.

126.    Defendant intentionally concealed and suppressed the true nature of the Blended Products by only listing Glycinate magnesium and failing to list the inferior magnesium, Oxide, anywhere on the Blended Products' label.

127.    Through this concealment, Defendants were able to trick consumers into paying more for a less expensive and inferior product.

128.    Were it not for Defendants' concealment of the true nature of the Blended Products ingredients, Plaintiff and the Class members would not have purchased the Blended Products or paid a price premium to purchase them.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

129.     As a direct and proximate result of Albion's improper conduct, Plaintiff and the other members of the Class have suffered damages and ascertainable losses of moneys and/or property in amounts to be determined by the Court or jury, by paying more for the Blended Products than they would have, and/or by purchasing the Blended Products when they would not have done so, had Albion not misrepresented the qualities of the Blended Products as set forth herein.

130.     By reason of the foregoing, Defendants are liable to Plaintiff and the Class for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## XIV.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants as follows:

A.     For preliminary and permanent injunctive relief enjoining Defendants, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unfair, unlawful and fraudulent business practices alleged above and that may yet be discovered in the prosecution of this action;

B.     For certification of the putative Class and appointment of Plaintiff as representative of the Class and her counsel as Class counsel;

C.     For restitution and disgorgement of all money or property wrongfully obtained by Defendants by means of its herein alleged unlawful, unfair, and fraudulent business practices;

D.     For an accounting by Defendants for any and all profits derived by Defendants from its herein alleged unlawful, unfair and fraudulent conduct and or business practices;

E.     For an award of statutory damages according to proof;

F.     For an award of general damages according to proof;

G.     For an award of special damages according to proof;

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1      H.      For exemplary damages;

2      I.      For an order requiring Defendants to cease and desist from engaging in the

3 wrongful conduct alleged herein and to engage in a corrective advertising campaign;

4      J.      For attorneys' fees and expenses pursuant to all applicable laws; and

5      K.      Awarding Plaintiff and the Class such other and further relief as this Court

6 deems just and proper.

7               **XV.  DEMAND FOR TRIAL BY JURY**

8      Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury.

9      RESPECTFULLY SUBMITTED AND DATED this 14th day of April, 2015.

10               TERRELL MARSHALL DAUDT & WILLIE PLLC

11

12             By:   /s/ Beth E. Terrell, WSBA #26759
                  Beth E. Terrell, WSBA #26759

13                 Email:  bterrell@tmdwlaw.com
                 936 North 34th Street, Suite 300

14                 Seattle, Washington  98103-8869
                 Telephone:  (206) 816-6603

15                 Facsimile:  (206) 350-3528

16

17                 Richard W. Meirowitz
                 E-mail:  meirowitz@aol.com

18                 LAW OFFICE OF RICHARD W. MEIROWITZ
                 10 Muncy Avenue, Suite 606

19                 West Babylon, New York 11704
                 Telephone:  (917) 612-3409

20

21                 Kim E. Richman
                 E-mail:  krichman@richmanlawgroup.com

22                 THE RICHMAN LAW GROUP
                 195 Plymouth Street

23                 Brooklyn, New York 11201
                 Telephone:  (212) 687-8291

24

25

26

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

COMPLAINT – CLASS ACTION - 34

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Benjamin M. Lopatin
E-mail: blopatin@elplawyers.com
EGGNATZ, LOPATIN & PASCUCCI, LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 324-8620

*Attorneys for Plaintiff*

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# EXHIBIT "A"



# Product Data Sheet

## TRAACS®






ISO 9001:2008

101 North Main Street • Clearfield • Utah 84015 / P.O. Box 750 • Clearfield • Utah 84089 • USA • (801)773-4631 • (800)453-2406 • Fax (801)773-4633
www.AlbionMinerals.com

| | | | |
|---|---|---|---|
| **Product Name:** | Magnesium Bisglycinate Chelate Buffered | **Revision Date:** | 01-Jan-2012 |
| **Product Number:** | 03451 | **Country of Origin:** | USA |

| GUARANTEED ANALYSIS | |
|---|---|
| Magnesium | Not less than 18.0 % |

| TRAACS ID | |
|---|---|
| FTIR Spectrum | Pass |

| HEAVY METAL | |
|---|---|
| Lead | Not more than 1.5 ppm |
| Cadmium | Not more than 0.5 ppm |
| Mercury | Not more than 0.1 ppm |

| PHYSICAL CHARACTER | |
|---|---|
| Color | White to off-white |
| Density | Not less than 0.70 g/cc |
| Nitrogen | 8.5 -10.5 % |
| Moisture | Not more than 7 % |
| pH | 10.0 -11.0 (1 % in distilled water) |

| MICROBIOLOGICAL ANALYSIS | |
|---|---|
| Total Plate Count | Not more than 1,000 CFU/g |
| Mold & Yeast | Not more than 100 CFU/g |
| Coliform Count | Negative |
| E Coli | Negative |
| Staphylococcus aureus | Negative |
| Salmonella | Negative |

| INCOMPATIBILITIES |
|---|
| Do not use with organic solvents: i.e., acetone, benzene, alcohols. |

| INGREDIENTS |
|---|
| Magnesium bisglycinate chelate (CAS # 14783-68-7), magnesium oxide, citric acid, maltodextrin, silica |

| NUTRITION FACTS * | | | |
|---|---|---|---|
| **Serving** | 100 g | | |
| **Total Calories** | 305 | | |
| | **Calories** | **% DV \*\*** | **RDA (g/day) \*\*\*** |
| Fat (0 g) | 0 | 0 % | 35 |
| Carbohydrates (17 g) | 67 | 13 % | 130 |
| Protein (238 g) | 238 | 119 % | 50 |

    \* All nutritional information is based on proximate analysis
    \*\* %DV calculated from 2000 calorie diet,
    \*\*\*www.cnpp.usda.gov/Publications/DietaryGuielines/2010/PolicyDoc/PolicyDoc.pdf

The above specifications are subject to change without notice. A Certificate of Analysis is issued for each production lot indicating compliance with the above specification at the time the lot is produced.
Albion's products comply with allergen regulations from all major markets including those of the US FDA, the European Commission and Health Canada. An allergen declaration is available on www.AlbionSIDI.com
Patents: 5516925, 2198258, PI9508746-0, 7838042
While applicable tariff codes may change from jurisdiction to jurisdiction, some importers have imported this product under the following Tariff Code: 2922.50.5000.

©2013 Albion Laboratories, Inc. All rights reserved.
All trademarks referenced herein (with ®, ™, or otherwise) are the property of, or used under license by, Albion Laboratories, Inc.
The information in this document is proprietary information and is supplied solely for the customer's use with respect to this product.
Page 1 of 1 (B)

# EXHIBIT "B"

## TRADEMARK AND PATENT NUMBER LICENSE AGREEMENT

THIS TRADEMARK AND PATENT NUMBER LICENSE AGREEMENT (the "Agreement") is made and entered into as of April 21, 2008 (the "Effective Date"), by ALBION LABORATORIES, INC. ("Albion"), a Utah corporation with offices located at 101 North Main Street, Clearfield, Utah 84015, and DESIGNS FOR HEALTH, INC. ("Customer"), with offices located at 2 North Road, East Windsor, Connecticut 06088, collectively "the Parties".

### RECITALS

A.    Albion Laboratories, Inc. owns various U.S. and foreign patents giving Albion the right to exclude others in the U.S. and abroad from making, using, or selling products covered by Albion patents.

B.    Albion Laboratories, Inc. owns various U.S. and foreign trademark registrations for marks intended for the exclusive use of Albion and its licensees.

C.    Customer has or may purchase product covered by one or more of Albion's Patents for use in Customer's formulations, compositions or business ("Customer Purposes"). In connection with marketing of Customer's Purposes, Customer shall mark its goods with applicable Albion Patent Numbers and Albion Licensed Trademarks.

D.    Albion is willing to allow Customer to mark its formulations, compositions and products containing Albion products with applicable Albion Patent Numbers, and use the Albion Licensed Trademarks under the terms and conditions set forth in this Agreement.

### AGREEMENT

In consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    **DEFINITIONS.**   In this Agreement, the following terms shall have the meanings set forth below:

   a.   "Albion Licensed Trademarks" shall mean the trademark or trademarks specifically identified in Exhibit A.

   b.   "Albion Patent Numbers" shall mean the patent number or numbers used to identify any issued and valid U.S. or foreign patent for which Albion has right to license hereunder and specifically identified at Exhibit B.

   c.   "Covered Products" shall mean the products identified in Exhibit C attached hereto which are products manufactured by Customer that include one or more products purchased from Albion as an ingredient therein.

   d.   "Effective Date" shall mean the date signed by Albion provided the agreement is previously or subsequently executed by Customer.

   e.   "Territory" shall mean the United States of America and its territories and possessions.

2.    **GRANT OF TRADEMARK LICENSE.** Albion hereby grants to Customer a nonexclusive license and right to use the Albion Licensed Trademarks (i) in connection with the respective Covered Products; (ii) solely in the Territory as defined herein; and (iii) subject to the terms and conditions of this Agreement. Albion shall require that a notice or notices acceptable to

COMPLAINT -- CLASS ACTION - 39

Albion be used on the Covered Products or marketing material bearing Albion Licensed Trademarks or Albion Patent Numbers to identify the licensed use under this Agreement and the proprietary rights of Albion.

3.    **ANCILLARY USE OF ALBION LICENSED TRADEMARKS.**  Customer is further authorized to use the Albion Licensed Trademarks and Albion Patent Numbers in the Territory on related Covered Products marketing material in publicity, advertising, signs, product brochures, cartons and other forms of advertising subject to the terms and conditions of this Agreement.

4.    **GOLD MEDALLION.**   Customer's license to use the Albion Minerals Medallion design trademark shall be restricted to use on products that meet Albion's stringent Gold Medallion Program requirements concerning use of Albion mineral ingredients, and on promotional material directly related to such products.   Covered Products meeting the Gold Medallion Program requirements shall be specifically designated in the list of Covered Products at Exhibit C attached hereto.

5.    **PROTECTION OF ALBION LICENSED TRADEMARKS AND PATENT NUMBERS.** Customer admits the validity of, and agrees not to challenge the Albion Licensed Trademarks and Albion Patent Numbers.  Customer also agrees that any and all rights that may be acquired by the use of the Albion Licensed Trademarks by Customer shall inure to the sole benefit of Albion.  Customer agrees to execute all documents reasonably requested by Albion to effect further registration, maintenance and renewal of the Albion Licensed Trademarks and, where applicable, to record Customer as a registered user of the Albion Licensed Trademarks.  Customer shall not use the Albion Licensed Trademarks or any part thereof as part of its corporate name nor use any name or mark confusingly similar to the Albion Licensed Trademarks.

Customer further agrees not to register in any country any name or mark that resembles or is confusingly similar to the Albion Licensed Trademarks.  If any application for registration is, or has been filed in any country of said Territory by Customer which relates to any name or mark which, in the sole opinion of Albion, is confusingly similar, deceptive or misleading with respect to the Albion Licensed Trademarks, Customer shall immediately abandon any such application or registration or, at Albion's sole discretion, assign it to Albion at Customer's expense.   Customer shall reimburse Albion for all the costs and expenses of any opposition, cancellation or related legal proceedings, including attorney's fees, instigated by Albion or its authorized representative, in connection with any such registration or application.

Customer agrees to notify Albion, or its authorized representative, in the event Customer becomes aware of any infringement or threatened infringement of the Albion Licensed Trademarks or any misuse of the Albion Patent Numbers.  Likewise, Customer will notify Albion of any third party allegations or claims related to the Albion Licensed Trademarks or Albion Patent Numbers and shall provide all necessary information and assistance to Albion should Albion decide that infringement proceedings should be commenced or defended.

In the performance of this Agreement, Customer shall comply with all applicable laws and regulations and obtain all appropriate governmental approvals pertaining to the production, distribution, sale and advertising of the Covered Products, particularly those laws and regulations pertaining to the proper use and designation of trademarks and patent numbers in the countries of said Territory.  Customer shall promptly notify Albion should Customer become aware of any applicable laws or regulations that are inconsistent with the

COMPLAINT -- CLASS ACTION - 40

provisions of this Agreement. Albion may, at its option, either waive the performance of such inconsistent provisions or terminate the license and rights granted hereunder.

6.    **QUALITY CONTROL –TRADEMARK AND PATENT NUMBER USAGE.**   Customer agrees that, with respect to use of Albion Ingredients, Albion Patent Numbers and/or Albion Licensed Trademarks the nature and quality of Covered Products and all labeling, advertising, promotional, and other related materials marked with an Albion Patent Number or Albion Licensed Trademark shall conform to standards set by Albion.  Customer agrees to use the Albion Patent Numbers and Albion Licensed Trademarks only in the form and manner and with appropriate legends as instructed from time to time by Albion.

7.    **GRANT OF RIGHTS TO MARK LABELS WITH ALBION PATENT NUMBERS.** Albion hereby grants to Customer a nonexclusive right to use the Albion Patent Numbers on the respective Covered Products subject to the terms and conditions of this Agreement. Notwithstanding the above, Albion Patent Numbers are only valid during the life of the patent on which they are based. Patents generally have a life of twenty (20) years from the time of their initial filing.   However, patents may have a shorter lifespan.   It is the responsibility of the Customer to verify the continued validity of a patent number prior to use. For the term of this Agreement, Albion grants to Customer the right to use the Albion Patent Numbers in connection with the sale and promotion of Covered Products containing Albion Ingredients. Customer acknowledges and agrees that it does not have, nor shall it ever have or claim, any right, title or interest in any of Albion's patents.  All containers or packaging of the Covered Products sold by Customer which bear an Albion Patent Number shall identify Albion as the manufacturer of the Albion Ingredients contained therein.  Product labels and packaging shall also bear such additional information and detail as Albion may from time to time require, including without limitation, relevant patent information. All benefits arising from the use of the Albion Patent Numbers shall inure solely to Albion.

    Customer agrees to cooperate with Albion in facilitating Albion's control of the nature and quality of the Covered Products incorporating Albion's products and the nature and quality of labeling, advertising, promotional, and other related materials marked with an Albion Licensed Trademark or Albion Patent Number.  Customer agrees to supply Albion with specimens of use of Albion Patent Numbers and Albion Licensed Trademarks upon request or in accordance with a schedule established by Albion. Albion reserves the right to require Customer to submit layouts and/or drafts of proposed use of the Albion Licensed Trademarks or Albion Patent Numbers for advance approval with respect to, but not limited to, content, style, appearance, composition, timing and media. Albion shall not unreasonably withhold its approval of such materials.

    If at any time the Covered Products and usage of the Albion Licensed Trademarks or Albion Patent Numbers fail, in the sole opinion of Albion, to conform to Albion's standards of quality in materials, design, workmanship, use, advertising, and promotion, Albion or its authorized representative shall so notify Customer. At the request of Albion, Customer shall cease or modify any use of the Albion Licensed Trademarks or Albion Patent Numbers deemed not to be in compliance with the applicable standards or instructions. Albion reserves the right to immediately terminate this agreement without notice upon unauthorized or improper use of the Albion Patent Numbers or Albion Licensed Trademarks, or failure to comply with a request to correct such use.

8.    **NO ROYALTIES.**   No royalties shall be paid under this Agreement. Notwithstanding, this Agreement shall not fail for lack of consideration.

COMPLAINT -- CLASS ACTION - 41

9.  **ASSIGNMENT.** Customer shall not sell, assign, delegate, or otherwise transfer any of its rights or obligations hereunder without the prior written consent of Albion. Any attempted or actual assignment in contravention hereof shall be null and void.

10.  **SUBLICENSE.** Customer may not enter into any sublicense pursuant to this Agreement without the prior written consent of Albion. No sublicense agreement entered into by Customer pursuant to this Agreement may extend beyond the term of this Agreement.

11.  **TERM AND TERMINATION.** Unless sooner terminated in accordance with this Agreement, the rights granted herein shall commence on the Effective Date of this Agreement and shall continue in effect for an initial term of one (1) year, with automatic renewal for four (4) additional one-year terms, unless either party gives notice of non-renewal to the other party at least thirty (30) days prior to expiration of the initial or subsequent terms. Under no circumstances shall Albion be liable to Customer by reason of termination or non-renewal of this Agreement for compensation, reimbursement, or damages for (i) loss of prospective compensation, or (ii) good will or loss thereof, or (iii) expenditures, investments, or any type of commitment made by Customer in reliance on the existence of this Agreement.

12.  **INDEMNITY.** Customer shall defend, indemnify and hold harmless Albion, its subsidiaries, and its authorized representatives, against all claims, suits, costs, damages and judgments incurred, claimed or sustained by third parties, whether for personal injury or otherwise, because of the manufacture, marketing, use or sale of Covered Products bearing the Albion Licensed Trademarks and/or Albion Patent Numbers. Further, Customer shall indemnify Albion for all damages due to any improper or unauthorized use of Albion Licensed Trademarks or Albion Patent Numbers.

13.  **ATTORNEY FEES.** Should Customer default with respect to any of the covenants or agreements contained herein, Customer shall pay all costs and expenses, including reasonable attorney fees, expenses and costs, incurred by Albion to protect its rights hereunder, regardless of whether an action is commenced or prosecuted to judgment.

14.  **NOTICES.** Any notice required or permitted to be given under this Agreement shall be in writing sent by certified mail, confirmed facsimile message, or personal delivery. Notice shall be directed by one party to the other at its respective address below unless otherwise provided for in this Agreement:

> Albion:              Albion Laboratories, Inc.
>                      101 North Main Street
>                      Clearfield, Utah 84015
>                      Attn:  Legal Counsel
>
> Customer:            Designs for Health, Inc.
>                      2 North Road,
>                      East Windsor, Connecticut 06088

Any changes to the foregoing address information shall be by written notice to the other party. However, until such change of address has been received, any notice or request sent to the above addresses shall be effective upon mailing and shall be considered as having been received.

15.  **WAIVERS.** Any failure by Albion at any time or times hereafter to require strict performance by the other of any of the undertakings, agreements or covenants contained in

COMPLAINT -- CLASS ACTION - 42

this Agreement shall not waive, affect or diminish any obligation or duty of Customer. None of the covenants of Customer hereunder shall be deemed to have been waived unless such waiver is evidenced by an instrument in writing signed by Albion.

16. **LIMITATION OF LIABILITY. TO THE EXTENT PERMISSIBLE BY LAW, ALBION SHALL NOT BE LIABLE FOR ANY DAMAGES IN EXCESS OF THE VALUE OF THE ALBION PRODUCTS SOLD TO CUSTOMER WITHIN THE MOST RECENT THREE (3) MONTH PERIOD. NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, ALBION SHALL IN NO EVENT BE RESPONSIBLE TO CUSTOMER OR ANY THIRD PARTY IN CONTRACT OR IN TORT, OR OTHERWISE, FOR LOSS OF PROFIT OR REVENUES, OR FOR ANY OTHER INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, EXEMPLARY, OR CONSEQUENTIAL LOSS OR DAMAGE, WHETHER ARISING FROM ANY CAUSE WHATSOEVER.**

17. **GOVERNING LAW.** This Agreement and all matters relating hereto shall be governed by, construed and interpreted in accordance with the laws of the State of Utah, without regard to principles of conflicts of laws. In addition, Customer hereby consents to the jurisdiction of the federal and state courts of the State of Utah as proper forum for resolution of disputes hereunder.

18. **SECTION HEADINGS.** Section headings in this Agreement are for ease of reference only and are not intended to affect the meaning or interpretation of this Agreement.

19. **ENTIRE AGREEMENT.** The provisions of this Agreement contain the entire agreement between the parties relating to use by Customer of the Albion Licensed Trademarks and/or the Albion Patent Numbers on Covered Products, and on marketing material, manufactured or provided by Customer. These provisions supersede and cancel all prior provisions, negotiations, agreements and commitments (whether oral or in writing) with respect to the subject matter hereof. No rights are granted to use the Albion Licensed Trademarks or Albion Patent Numbers on such Customer manufactured Covered Products or marketing material except as specifically set forth in this Agreement. This Agreement may not be released, discharged, abandoned, changed or modified in any manner except by an instrument in writing signed by the parties. In the event of any conflict between the provisions of this Agreement and provisions in any other agreement involving Customer, the provisions of this Agreement shall prevail.

IN WITNESS WHEREOF, each Party has caused this Agreement to be executed by its duly authorized representatives below.

CUSTOMER                                          ALBION

_____          _____
Jonathan Lizotte                                  Nathan D. Nelson
President                                         General Counsel

DESIGNS FOR HEALTH, INC.                          ALBION LABORATORIES, INC.

COMPLAINT -- CLASS ACTION - 43

**EXHIBIT A**
**TO THE TRADEMARK AND PATENT NUMBER LICENSE AGREEMENT**
between Albion Laboratories, Inc., and Designs for Health, Inc.
dated April 21, 2008

**ALBION LICENSED TRADEMARKS**

TRAACS™
FERROCHEL®
CHELAZOME®
CHELAVITE®
ALBION®



**HUMAN NUTRITION**



®

FOLLOWING IS A NOTICE TO BE USED AS A MODEL FOR LABELS AND ADVERTISING MEDIA OF
PRODUCTS CONTAINING ALBION INGREDIENTS:

*TRAACS, Ferrochel, Chelazome, Chelavite, Albion, Albion Human Nutrition Logo, and Gold
Medallion are trademarks of Albion Laboratories, Inc.*

COMPLAINT -- CLASS ACTION - 44

**EXHIBIT B**
**TO THE TRADEMARK AND PATENT NUMBER LICENSE AGREEMENT**
Between Albion Laboratories, Inc., and Designs for Health, Inc.
dated April 21, 2008

U.S. PATENT NUMBER: 5,516,925
AMINO ACID CHELATES HAVING IMPROVED PALATABILITY
*FILED: 8-23-94

U.S. PATENT NUMBER: 6,716,814
ENHANCING SOLUBILITY OF IRON AMINO ACID CHELATES AND IRON PROTEINATES
*FILED: 8-16-01

U.S. PATENT NUMBER: 5,614,553
COMPOSITION AND METHOD FOR ALLEVIATING STRESS IN WARM-BLOODED ANIMALS
*FILED: 2-21-92

**\*PLEASE NOTE THAT PATENTS ARE TYPICALLY VALID FOR A PERIOD OF TWENTY (20) YEARS FROM THE TIME OF FILING.**

FOLLOWING IS A NOTICE TO BE USED AS A MODEL FOR MARKING THE ALBION PATENT NUMBERS ON LABELS AND ADVERTISING MEDIA RELATED TO PRODUCTS CONTAINING ALBION INGREDIENTS:

*This product is covered by U.S. Patent Numbers: 5516925, 6716814, 5614553 and patents pending.*

COMPLAINT -- CLASS ACTION - 45

EXHIBIT C
TO THE TRADEMARK AND PATENT NUMBER LICENSE AGREEMENT
Between Albion Laboratories, Inc., and Designs for Health, Inc.
dated April 21, 2008

CUSTOMER'S PRODUCTS

ANTI-AGING SUPPORT PACKETS
ATHROSOOTHE
CATECHOLACALM
*DFH COMPLE MULTI
*DFH COMPLETE MULTI IRON FREE
*COMPLETE MINERAL COMPLEX
DETOXIFICATION SUPPORT PACKETS
ELECTROLYTE SYNERGY
ENDOTRIM
*FERROCHEL
FEMGUARD BALANCE
HIGH CHOLESTEROL SUPPORT PACKETS
HTN COMPLEX
HIGH TRIGLYCERIDES SUPPORT PACKETS
HOMOCYSTEIN SUPREME
K+@ POTASSIUM
*MAGNESIUM GLYCINATE CHELATE
*METABOLIC SYNERGY
METABOLIC SYNDROME SUPPORT PACKETS
MYOSEDATE
OCUFORCE
PALEOCLEANSE
PROSTATE SUPREME
PRENATAL TWICE DAILY ESSENTIAL PACKETS
SUBLINGUAL B6 LIQUID
TWICE DAILY ESSENTIAL PACKETS
THYROID SYNERGY
WEIGHT LOSS SUPPORT PACKETS
ZINC SUPREME
*CHROMIUM SYNERGY
THYROID SYNERGY
*OSTEOFORCE
*ZINC SUPREME
*CALCIUM MALATE CHELATE
*MAGNESIUM MALATE CHELATE
VITAVESCENCE
TWICE DAILY MULTI 60'S
TWICE DALITY MULTI 120'S
TWICE DAILY MULTI 240'S
PALEOMEAL NATURAL STRAWBERRY
PALOEMEAL NATURAL VANILLA
PALEOMEAL NATURAL CHOCOLATE
NIACIN SUPREME
THREE A DAY ANTIOXIDANT

*Indicates Gold Medallion Product

COMPLAINT -- CLASS ACTION - 46

# EXHIBIT "C"

Subj:     **RE: Integrated Supplements Bio-Available Magnesium**
Date:     1/11/2014 10:19:29 A.M. Eastern Standard Time
From:     info@integratedsupplements.com
To:       MEIROWITZ@aol.com
Hello, Richard,

Did you receive my email to you from January 7th? I will reply to this current email as well, but you don't seem to have addressed any of the points or research I presented in my January 7th email, so I wonder If you even received it. It is posted again below:

Hello, Richard

I noticed your review of various magnesium supplements on the product page of our Bio-Available Magnesium on Amazon.com. While I respect the effort you put in to compiling the information, there were a few areas in which I think you may not be familiar with the existing research on magnesium – in particular, research on Albion's Buffered Magnesium Glycinate. I wanted to reach out to you via email first before I post this information as a comment relating to your review.

The predominate magnesium source in our product happens to be Albion's DiMagnesium Malate. The other magnesium source is, indeed, Albion's Buffered Magnesium Glycinate (what Albion ***strictly*** refers to as: Magnesium Glycinate Chelate Buffered – more on this later). This form of magnesium happens to contain small amounts of magnesium oxide as a buffering agent. ***However***, contrary to what some people simply assume, research from Albion Nutrition has ***clearly*** demonstrated that their buffered magnesium glycinate is **MORE** bioavailable than their fully-reacted, unbuffered, Magnesium Glycinate Chelate. In fact, the difference in absorption between the buffered version of Magnesium Glycinate Chelate and unbuffered Magnesium Glycinate Chelate was found to be very similar to the difference in absorption between unbuffered Magnesium Glycinate Chelate and magnesium oxide. As such, any claim that magnesium amino-acid chelates are absorbed significantly better than magnesium oxide, should therefore also point out that the buffered chelate of Magnesium Glycinate is absorbed significantly better than the non-buffered one – at least according to the study in question that ***directly*** compared them.

According to Albion's research, the area under the curve values for each type of magnesium measured over 8 hours were as follows:
Magnesium Glycinate Chelate Buffered: 0.225
Unbuffered Magnesium Glycinate Chelate: 0.164
Magnesium Oxide: 0.109
DiMagnesium Malate 0.196

So, since the buffered version of magnesium glycinate:
1. Is absorbed significantly better than the non-buffered form
2. Has a higher elemental magnesium content, allowing more magnesium to be included in a supplement for a given weight (in practical terms, this often means the customer will have to take fewer pills to reach a given magnesium dose – a very important factor to many people).
3. Does not cause stomach upset or a laxative effect

…it is the buffered form we decided to use as one of the ingredients in our product. The choice was, in fact, simple given what the research showed. As a research-based company, we at Integrated Supplements MUST give credence to the existing research. We simply cannot base our product formulation decisions on unfounded assumptions of how compounds are "supposed" to work or be absorbed. While high doses of pure magnesium oxide may be relatively poorly absorbed (on a

percentage or fractional basis), the research shows that small doses of magnesium oxide used as a buffering agent (e.g., Albion's Buffered Magnesium Glycinate Chelate), are likely to actually ***improve*** magnesium absorption.

I understand how this finding could seem somewhat counterintuitive, as many people assume magnesium oxide to be poorly absorbed in ***any*** conceivable dose. There are many possible reasons, however why small amounts of magnesium oxide may facilitate magnesium absorption when included with magnesium glycinate. Whatever the reasons, this is precisely what a head-to-head comparison found.

Again, this research looked at ***exactly*** what most people are concerned with when it comes to magnesium supplementation – namely, magnesium absorption and incidence of side effects. The various forms of magnesium were administered in equal elemental quantities. They were compared head-to-head, and Buffered Magnesium Glycinate and DiMagnesium Malate simply fared the best in absorption, and were very well tolerated – which is why we used them in our product.

All of this information (in addition to a graph from Albion's study) is available on our website, which I directed you to in my previous email.

Note: In Albion's study, DiMagnesium Malate was also found to be better-absorbed than non-buffered Magnesium Glycinate Chelate. Because of the important biological actions of malate/malic acid (and its synergy with magnesium), we used this ingredient in our product as well.

To clarify, there was no impropriety or deception on our part with regard to the ingredients we use or the supplement facts panel on our product. Where we source our raw materials from Albion Nutrition (and are proud to do so), we label all ingredients in strict accordance with the requirements legally set forth by Albion Nutrition. If we didn't label our product exactly as Albion dictates, we simply couldn't advertise the fact that we use their ingredients.

Ultimately, we used what research has shown to be the two highest-absorption magnesium sources available. Unlike many forms of magnesium, both are pure, healthy, and remarkably free from side effects. If we were formulating the product again today, it would contain the exact same formula – the feedback we've gotten from users and practitioners alike (people who have used the product and people who have the ability to objectively gauge its effectiveness) has been overwhelmingly positive.

There were a few other issues that I noticed with your review as well.

In your list of chelated magnesium products, were you meaning to list amino-acid chelates (it's common for people to sometimes use the term "chelated", when they specifically mean "amino-acid-chelated")? If so, it probably would have been more accurate to point out that some of the products you listed ***contain*** some amino-acid chelated minerals instead of using the phrase "are chelated" – ours and several others you list aren't made exclusively with amino-acid chelated minerals. Further, though amino acid chelated mineral forms are often excellent, the often-made assumption that every amino-acid chelated mineral trumps a non-chelated form of the same mineral is unfounded. Non-amino-acid-chelated minerals are sometimes better absorbed than amino-acid chelated ones (e.g., DiMagnesium Malate as mentioned previously) and some amino acids used as chelation ligands may not be suitable for all people (e.g., aspartic acid/aspartate and lysine/lysinate – we specifically avoided both of these). Non-amino-acid ligands (again, like malate/malic acid) may also impart benefits independent of the mineral to which they're attached – again, the biological function of malate/malic acid is a major reason why we used DiMagnesium Malate in our product.

An analysis of magnesium products "per pill" may not be the best gauge of value due to the fact that the magnesium products you listed may contain widely different amounts of magnesium per pill. I realize that there's no perfect gauge that takes all factors into account with regard to price, but perhaps cost per gram of magnesium would be a better metric?

Also, the existing research we investigated when formulating our product simply didn't support the use of timed-release or enteric-coated magnesium. This is another area where popular assumptions simply aren't supported by the existing research. We've written a bit about this on our website:

Q. Are timed–release or sustained–release magnesium products better–absorbed than immediate release formulas?

A. What little research exists on the topic seems to indicate that they are not. Some research has even found that sustained release magnesium formulas are more poorly absorbed than immediate–release formulas. To understand why this was the case, we need to understand two major factors in determining magnesium absorption:

1. The solubility of the magnesium source (i.e., how easily the substance will dissolve in water / intestinal contents). Generally, the greater the solubility, the greater the absorption.

2. Once the magnesium source is ingested and dissolved, absorption is dependent upon how much surface area of the intestines it comes in contact with (generally, the greater intestinal surface area dissolved magnesium is exposed to, the better the absorption).

The following study found that the absorption of magnesium from enteric–coated (sustained–release) magnesium chloride supplements was 67% less than the absorption of magnesium delivered in gelatin capsules (immediate–release). The researchers reasoned that because sustained–release pills take longer to break down, less of the surface area of the intestines will be exposed to dissolved magnesium, so absorption will naturally be lower.

Study Link – Intestinal Absorption of Magnesium from Food and Supplements.
http://www.ncbi.nlm.nih.gov/pmc/articles/PMC295344/

Quote from the above study:
We chose to study MgAc [magnesium acetate] in gelatin capsules so that Mg would be quickly presented to the intestine in a soluble (absorbable) state... We also found that Mg absorption from enteric–coated Mg chloride (Slow–Mag®) on average was 67% less than from MgAc in gelatin capsules. Since it is not likely that chloride and acetate influenced Mg absorption directly, our results suggest that the enteric coating on Slow–Mag® tablets (cellulose acetate phthalate) reduced Mg bioavailability. This could be explained by the fact that cellulose acetate phthalate requires a 3–5–h exposure to gastrointestinal contents before pill contents are completely expelled; this delay would presumably reduce the small bowel absorptive area to which ingested Mg is exposed, and consequently reduce absorption.

Again, I do appreciate the time and effort you invested in compiling your comparison (we likely both agree that magnesium is a very important mineral for human health), but I suspect that your review of the relative merits of each product was influenced largely by unfounded assumptions, and not by what the very pertinent research actually shows. I think your review would be of greater use to potential customers if it addressed the actual data that exists on the bioavailability of various magnesium forms and delivery methods.

Please let me know if you have any additional questions, I'd be happy to help in any way I can.

-John Coronite
Integrated Supplements

**From:** MEIROWITZ@aol.com [mailto:MEIROWITZ@aol.com]
**Sent:** Friday, January 10, 2014 7:03 AM
**To:** info@integratedsupplements.com
**Subject:** Integrated Supplements Bio-Available Magnesium

Hello, John,

Thank you for your email response of January 6, 2014.

I write reviews for Amazon primarily regarding dietary supplements. I post under the pseudonym RWM. I am a Top 100 Reviewer and I am probably considered to be the most prolific and followed writer of these reviews on Amazon. Here is a link to my profile and to my reviews:

https://www.amazon.com/gp/pdp/profile/A3UIH7DCQRA21L?ie=UTF8&ref_=cm_aya_bb_pdp

I have reviewed Integrated Supplements Bio-Available Magnesium. See,

http://www.amazon.com/Integrated-Supplements-Bio-Available-Magnesium-Capsules/product-reviews/B003OETP6O/ref=dp_top_cm_cr_acr_txt?showViewpoints=1

I have given your product three stars. My primary concern is your failure to disclose magnesium oxide in your product's supplement facts panel. I view this as a serious omission. Another concern is your assertion of "proprietary information" and the withholding of information because of that assertion. I do not believe the information you have withheld is "proprietary information." I believe consumers have an absolute right to know the content of the product they purchase. I believe F.D.A. regulations require this.

My question is, what do you intend to do about this omission, if anything?

If you would like to discuss this, I am always available to do so. Likewise, if you feel I have been unfair about your product because of this omission, I am always willing to listen.

I'll look forward to hearing from you.

Richard W. Meirowitz
RWM On Amazon
Meirowitz@aol.com
(631) 661-1761

In a message dated 1/6/2014 1:19:51 P.M. Eastern Standard Time, info@integratedsupplements.com writes:

Hi Richard,

You may want to look at the page for the Bio-Available magnesium on our website, most of your questions are answered there:
http://www.integratedsupplements.com/intsup/intsup0011.MAG

The product contains Di-Magnesium Malate and Magnesium Glycinate Chelate Buffered – both sourced exclusively from Albion Nutrition. There are no fillers, binders, or other ingredients aside from the vegetarian capsule. Each serving (2 capsules) contains 300mg of elemental magnesium, we don't however, divulge our exact formulations (i.e., the percentages of each ingredient) – this is largely to provide some degree of protection against the product being copied by our competition.

Research from Albion Nutrition shows that Magnesium Glycinate Chelate Buffered offers slightly superior absorption relative to the non-buffered form. Similarly, DiMagnesium Malate is slightly better absorbed than non-buffered magnesium glycinate as well. Using these two forms allowed us to offer magnesium forms with the highest absorption, while ensuring that the amount of elemental magnesium in each pill was among the highest possible in an encapsulated (i.e., non-tablet) product. Magnesium Glycinate Chelate Buffered contains small amounts of magnesium oxide as a buffering agent, however, the presence of small amounts of magnesium oxide doesn't impair the overall absorption of magnesium (if anything, it may improve it, as Albion's research shows), and it doesn't impart a laxative effect. It's only at relatively high(er) doses that magnesium oxide achieves sub-optimal fractional absorption rates, and is prone to causing a laxative effect. From the feedback we've received on our Bio-Available Magnesium (from customers and practitioners who offer the product to their patients), we have reason to believe that gastrointestinal tolerance to our product may even be superior to other high-absorption magnesium products.

Please see the answers to your other questions below.

Thanks for your inquiry,


John Coronite

Integrated Supplements
2413 Algonquin Rd Suite 412
Algonquin IL 60102

1-888-605-4216
Cell: (773) 344-1411

www.IntegratedSupplements.com

Gentlemen:

I have some questions regarding your product, Integrated Supplements Bio-Available Magnesium.d

Is this made of di-magnesium malate and magnesium glycinate buffered?
YES
Is it water soluble
YES

Certified Kosher?
YES
Is it buffered?
Magnesium Glycinate Chelate Buffered is Buffered
What is the buffering agent?
Magnesium Oxide -- See Above
Quantity of magnesium glycinate, malate
Proprietary
Percentage of magnesium glycinate, malate
Proprietary
Does it contain magnesium oxide?
As a component of Magnesium Glycinate Chelate Buffered
Percentage of magnesium oxide?
Proprietary
Does it contain filler?
NO
What does the filler consist of?
NA
Quantity of the filler?
NA
Percentage of the filler?
NA
Does it contain soy?
NO
Does it contain GMOs?
NO
Does it contain stearates?
NO
Does it contain cholesterol?
NO
Is it chelated?
Magnesium Glycinate Chelate Buffered contains chelated magnesium glycinate
Is it vegetarian?
YES
Is it enteric coated?
NO -- no evidence suggests that enteric coating is necessary or beneficial to magnesium absorption
Does it contains laxative properties?
NO
Is it manufactured in the U.S.A.?
YES
What are the Ingredients?
DiMagnesium Malate, Magnesium Glycinate Chelate Buffered, Vegetarian Capsule
Are any of the ingredients sourced from China?
NO

Thanks in advance.

Richard W. Meirowitz
Meirowitz@aol.com

COMPLAINT -- CLASS ACTION - 53
Monday, February 03, 2014 AOL: MEIROWITZ

# EXHIBIT "D"



Amazon.com: [illegible header navigation text]

Richard's Amazon.com   Today's Deals   Gift Cards   Sell   Help

Shop by Department ▾    Search    | Go |    Hello, Richard Your Account ▾    Your Prime ▾    2 Cart ▾    Wish List ▾

Health & Personal Care   Best Sellers   New Arrivals   Baby & Child Care   Vitamins & Diet Supplements   Sports Nutrition   Household Supplies   Health Care



Roll over image to zoom in

agnesium ULTRA - High
sorbency Buffered Magnesium

bs - Scientifically Proven to
orrect Magnesium Deficiency -
itisfaction Guaranteed - Free
ipplement Guide Included
Nuvari

3 customer reviews

i answered questions

Share

**Currently unavailable.**
We don't know when or if this item
will be back in stock

Add to Wish List



don't know when or if this item will be back in stock

- i0 Easy-to-swallow Vcaps - 150mg each  One bottle contains 30-90 servings depending on daily use
- May alleviate symptoms of Magnesium Deficiency including fatigue, muscle aches, cramps, leg twitches, anxiety, depression, migraines hypertension, severe PMS, persistent constipation, insulin resistance and more *
- Our unique 100% TRAACS Buffered Magnesium BisGlycinate Chelate formula from Albion Labs is scientifically proven to be highly bio-available
- Buffered formula is easily tolerated by sensitive persons. No odor capsules are easy on the digestive system. Contains NO soy, yeast, sugar, dairy, gluten, artificial colors, flavors, or preservatives Hypoallergenic, Kosher, and Halal
- Includes a FREE easy to read Supplement Guide with valuable information on Magnesium ULTRA and recommendations on daily use

## Customers Who Viewed This Item Also Viewed

Page 1 of 10



Doctor's Best High
Absorption Magnesium
(200 Mg Elemental), 240-
Count
(187)
$16.24

Bluebonnet - Albion
Chelated Magnesium 200
Mg - 120 VegCap
Kosher,Gluten-Free
(41)
$20.88

Designs for Health
Magnesium Glycinate
Chelate Capsules, 120
Count
(13)
$22.85

Albion Chelated
Magnesium 133 mg 90
Caps
(4)
$21.50

### Customers viewing this page may be interested in these sponsored links (What's this?)

- **DFH:** - Improve mental health, fatigue & more. Shop online now & save big!  www.rockwelinutrition.com/
- - Designs For Health Products. **Free** Shipping, Low Prices- Buy Now!  www.pureformulas.com/
- **Drvita** - Save Up To 70% at DrVita. **Free** Shipping on all Orders over  www.drvita.com/

COMPLAINT -- CLASS ACTION - 55

Page 1 of 5

See a problem with these advertisements? Let us know

## Product Description

### TIRED OF FEELING RUN-DOWN BUT YOU DON'T KNOW WHY?

- Are You Fatigued, Stressed-out, or Anxious?
- Do You Suffer from Low Energy and Poor Sleep?
- Do you have Hypertension, Migraines, or Sore Muscles?

### AS MANY AS 80% OF AMERICANS SUFFER FROM MAGNESIUM DEFICIENCY BUT MAY NOT EVEN KNOW IT!

- Your Body NEEDS Magnesium for Over 300 Important Enzymatic Reactions that are Essential for Health and Well Being.
- The typical diet does NOT contain enough Magnesium, and our stressful lifestyles rapidly deplete our bodies of this vital nutrient.
- Most Multi-Vitamins and cheap supplements contain a form of magnesium that is not readily bio-available.

### MAGNESIUM ULTRA IS DRAMATICALLY DIFFERENT FROM OTHER MAGNESIUM SUPPLEMENTS

- Magnesium ULTRA is formulated to bind Magnesium ions between two glycinate 'carrier' molecules which form a 'shield' to safely deliver it to the small intestine and into the bloodstream.
- Our easy to swallow Vcaps do not contain ANY of the additives found in cheaper brands that often cause digestive problems or allergic reactions.
- We source our special formula from Albion Labs - the mineral supplement experts. Albion scientifically tests it's magnesium for quality, so you can rest assured you are getting what you've paid for.

### HOW MUCH SHOULD I TAKE?

- Everyone is a little different and and your Magnesium needs will vary depending on your diet and lifestyle. So we've taken out the guesswork with a FREE guide on the recommended daily use of Magnesium ULTRA.

**SATISFACTION GUARANTEED:** If at any time you are not completely satisfied with this product, you may return it for a full refund

**You Deserve to Feel Better! Click the Add to Cart Button to Buy Now!**

## Product Details

**Shipping Weight:** 4.8 ounces

**Origin:** Made in USA

**ASIN:** B00EAPQIRU

**UPC:** 820103235709

**Average Customer Review:** (3 customer reviews)

**Amazon Best Sellers Rank:** #329,059 in Health & Personal Care (See Top 100 in Health & Personal Care)

Did we miss any relevant features for this product? **Tell us what we missed.**

**Product Ads from External Websites** (What)  or tell us about a lower price?

Sponsored Content

Chelated Magnesium 100 Tabs by Solgar
(21)
$10.71
+ $4.99 Est. shipping
Swanson Vitamins

Magnesium 400 mg 180 Caps by NOW Foods
(51)
$7.75
+ $4.99 Est. shipping
Swanson Vitamins

Carlson Labs - Chelated Magnesium 200 mg
(23)
$33.40
+ Free Shipping
Professional Supplement Center


Magnesium, 400mg, 180 capsules
(51)
$7.99
+ $4.95 Est. shipping
Nutrition, Inc.

See a problem with these advertisements? Let us know.

Advertise here

## Customer Questions & Answers

**Q: How does this person know that this product is buffered with 50% magnesium oxide? I'm just a consumer and wondering where this information came from**

A: Thank you for your interest in Nuvari's Magnesium ULTRA. The question you are referring to appears to come from a few comments posted on forums or...
See more

**Q: The FDA specifically told me every ingredient must be listed on the label. Are you telling me Albion provides you the label for all ingredients?**

A: We have conducted further research into this matter and have spoken further with our supplier and Albion. It appears that our supplier failed to...
See more

**Q: Will the Supplement Guide be mailed with my order? I like that y'all offer it. Thanks!**

A: The Supplement Guide is emailed to you as soon as your product is shipped! It will contain helpful information on the proper use of our product, as...
See more

**See all 5 questions & answers**

Have a question? Ask the owners here.

(3)

3.7 out of 5 stars

| | | |
|---|---|---|
| 5 star | | 2 |
| 4 star | | 0 |
| 3 star | | 0 |
| 2 star | | 0 |
| 1 star | | 1 |

See all 3 customer reviews

Share your thoughts with other customers

Write a customer review

Ask owners

verizon

NEW LIMITED-TIME OFFER

$45 MONTHLY ACCESS

DATA UNLIMITED
PLAN TALK & TEXT

Learn More

Advertisement

3 of 4 people found the following review helpful

**Grateful to have found this product**

By Paul E Havener on January 7, 2014

Amazon Verified Purchase

After multiple trips to the doctors with no real solution to my intestinal ailments, I am finally turning to something more natural and less toxic to my body. What truly made me take the leap into buying this product over all other options was the free guide that helps to determine how much to take. Most Supplements tell you to take up to 5 or 6 at a time and multiple times a day, which may not suite everyone's needs (and truly is more about benefiting the supplement producer's pockets over anything else, imho). My husband decided to try this supplement as well for his less than stellar sleep. He can take the amount he needs to see improvements and I take a different amount. This leads to another reason I like this product. There is enough so that my husband and I don't have to over stock on the product in order to have enough between the two of us for more than a few weeks. Thankfully too, this is also a Vcap, so my vegetarian family members can take them knowing they are animal byproduct free. I recommend anyone looking for a more natural and balanced way of getting healthier, to try this product.

1 Comment  Was this review helpful to you?  Yes  No

Add a
product
image

Search Customer Reviews

Search

Only search this product's reviews

1 of 2 people found the following review helpful

**THIS SEVERELY OVERPRICED PRODUCT VIOLATES FEDERAL LABELING LAWS**

By A. Hottmar on January 15, 2014

This product is severely overpriced and contains a large amount of magnesium oxide (the company says 40%) which is less bioavailable than other forms and is a well known laxative.

Swanson sells basically the same product for $10.90 vs $27.11 for Nuvari on Amazon, although it has 133 mg/cap vs. 150 mg for the Nuvari product, a difference of slightly more than 10%. That is almost 1/3 the price, a difference of $.12/cap vs. $.30/cap. If you go to the Swanson website you can find the same Swanson caps for $.046/cap if you buy the 180 cap bottle. That makes the Nuvari product 650% more expensive for only 10% more magnesium. That is clearly a rip off.

And this company is in violation of federal law by failing to disclose magnesium oxide on their label.

CAVEAT EMPTOR  LET THE BUYER BEWARE

Those who are interested can check out the questions and answers section of this product. After repeated denials that **COMPLEMENTS now CLASS has CORONA** violation of FDA labeling regulations,



Richard's Amazon.com   Today's Deals   Gift Cards   Sell   Help

Shop by
Department ▾

Search

Hello, Richard
Your Account ▾

Your
Prime ▾

2
Cart ▾

Wish
List ▾

How does this person know that this product is buffered with 50% magnesium oxide? I'm just a consumer and wondering where this information came from

asked by Tony Damico on January 7, 2014

Magnesium ULTRA -
High Absorb...

Answer here...

Answer

Showing 1-1 of 1 answers

Sort: **Most Helpful first** | Newest first | Oldest first

Thank you for your interest in Nuvari's Magnesium ULTRA. The question you are referring to appears to come from a few comments posted on forums or reviews of other products that also use Albion's Buffered Magnesium BisGlycinate Chelate. Albion does not say what they use as a buffer unless you inquire ot them directly. When hearing that the buffer used is Magnesium Oxide, some mistakenly jump to the conclusion that this dilutes the formula and makes it a lower quality supplement. But this simply isn't true

As mentioned in an answer to another question about our product, a clinical study done by Albion indicated that their buffered formula offered a slightly higher blood serum level of Magnesium over the non buffered formula. The purpose of this study was actually showing how Magnesium Oxide by itself has very poor bio-availability compared to Albion's formulations.* Yet indirectly the results of this study indicates that when used as a buffer along with Albion's BisGlycinate Chelate, Magnesium Oxide appears to actually offer a slight benefit.

As a company, we are careful to rely on scientific research to choose the formulations that go into our products.

*Source: "Magnesium: Bioavailability and tolerability of various Albion manufactured organic magnesium sources compared to magnesium oxide" (Albion Minerals, 2008). Show Less

Nuvari **SELLER** answered on January 13, 2014

Comment (1) | 1 of 1 found this helpful. Do you?  Yes   No | Report abuse

‹ Previous  [ ]  Next ›

See all questions about this product

Get to Know Us
Careers
Investor Relations
Press Releases
Amazon and Our Planet
Amazon in the Community

Make Money with Us
Sell on Amazon
Become an Affiliate
Advertise Your Products
Independently Publish with Us
› See all

Amazon Payment Products
Amazon.com Rewards Visa Card
Amazon.com Store Card
Shop with Points
Credit Card Marketplace
Amazon Currency Converter

Let Us Help You
Your Account
Shipping Rates & Policies
Amazon Prime
Returns & Replacements
Manage Your Kindle
Help

amazon.com

Australia  Brazil  Canada  China  France  Germany  India  Italy  Japan  Mexico  Spain  United Kingdom

6pm
Score deals
on fashion brands

AbeBooks
Rare Books
& Textbooks

AfterSchool.com
Kids' Sports, Outdoor
& Dance Gear

Alexa
Actionable Analytics
for the Web

AmazonFresh
Groceries & More
Right To Your Door

Amazon Local
Great Local Deals
in Your City

AmazonSupply
Business, Industrial
& Scientific Supplies

Amazon Web Services
Scalable Cloud
Computing Services

Audible
Download
Audio Books

BeautyBar.com
Prestige Beauty
Delivered

Book Depository
Books With Free
Delivery Worldwide

Bookworm.com
Books For Children
Of All Ages

Casa.com
Kitchen, Storage
& Everything Home

CreateSpace
Indie Print Publishing
Made Easy

Diapers.com
Everything
But The Baby

DPReview
Digital
Photography

East Dane
Designer Men's
Fashion

Fabric
Sewing, Quilting
& Knitting

IMDb
Movies, TV
& Celebrities

Junglee.com
Shop Online
in India

Kindle Direct Publishing
Indie Digital Publishing
Made Easy

Look.com
Kids' Clothing
& Shoes

MYHABIT
Private Fashion
Designer Sales

Shopbop
Designer
Fashion Brands

Soap.com
Health, Beauty &
Home Essentials

TenMarks.com
Math Activities
for Kids & Schools

Vine.com
Everything
to Live Life Green

Wag.com
Everything
For Your Pet

Warehouse Deals
Open-Box
Discounts

Woot!
Discounts and
Shenanigans

Yoyo.com
A Happy Place
To Shop For Toys

Zappos
Shoes &
Clothing

COMPLAINT -- CLASS ACTION - 58

Page 1 of 2



Richard's Amazon.com Today's Deals Gift Cards Sell Help

Shop by Department Search Go Hello, Richard Your Account Your Prime Cart Wish List

Magnesium ULTRA High Absorb...

The FDA specifically told me every ingredient must be listed on the label. Are you telling me Albion provides you the label for all ingredients?

asked by A. Hoffman on January 17, 2014

Answer here...

Answer

Showing 1-1 of 1 answers

Sort: **Most Helpful first** | Newest first | Oldest first

We have conducted further research into this matter and have spoken further with our supplier and Albion. It appears that our supplier failed to list the following other ingredients in the supplement facts provided for our label: magnesium oxide, citric acid, maltodextrin, silica These ingredients are part of the formula manufactured by Albion. They are not added in afterwards by our supplier. Nevertheless, it is required that they appear in the ingredients

We are very disappointed to learn that our labeling is incorrect We will be closing our Amazon listing this week in order to have our product relabeled and the ingredients listed properly. « Show Less

Nuvan SELLER answered on January 20, 2014

Comment | Do you find this helpful? Yes No | Report abuse

‹ Previous Next ›

See all questions about this product

Get to Know Us
Careers
Investor Relations
Press Releases
Amazon and Our Planet
Amazon in the Community

Make Money with Us
Sell on Amazon
Become an Affiliate
Advertise Your Products
Independently Publish with Us
› See all

Amazon Payment Products
Amazon.com Rewards Visa Card
Amazon.com Store Card
Shop with Points
Credit Card Marketplace
Amazon Currency Converter

Let Us Help You
Your Account
Shipping Rates & Policies
Amazon Prime
Returns & Replacements
Manage Your Kindle
Help

amazon.com

Australia Brazil Canada China France Germany India Italy Japan Mexico Spain United Kingdom

6pm Score deals on fashion brands | AbeBooks Rare Books & Textbooks | AfterSchool.com Kids' Sports, Outdoor & Dance Gear | Alexa Actionable Analytics for the Web | AmazonFresh Groceries & More Right To Your Door | Amazon Local Great Local Deals in Your City | AmazonSupply Business, Industrial & Scientific Supplies | Amazon Web Services Scalable Cloud Computing Services

Audible Download Audio Books | BeautyBar.com Prestige Beauty Delivered | Book Depository Books With Free Delivery Worldwide | Bookworm.com Books For Children Of All Ages | Casa.com Kitchen, Storage & Everything Home | CreateSpace Indie Print Publishing Made Easy | Diapers.com Everything But The Baby | DPReview Digital Photography

East Dane Designer Men's Fashion | Fabric Sewing, Quilting & Knitting | IMDb Movies, TV & Celebrities | Junglee.com Shop Online in India | Kindle Direct Publishing Indie Digital Publishing Made Easy | Look.com Kids' Clothing & Shoes | MYHABIT Private Fashion Designer Sales | Shopbop Designer Fashion Brands

Soap.com Health, Beauty & Home Essentials | TenMarks.com Math Activities for Kids & Schools | Vine.com Everything to Live Life Green | Wag.com Everything For Your Pet | Warehouse Deals Open-Box Discounts | Woot! Discounts and Shenanigans | Yoyo.com A Happy Place To Shop For Toys | Zappos Shoes & Clothing

Conditions of Use Privacy Notice Interest-Based Ads © 1996-2014, Amazon.com, Inc. or its affiliates

# EXHIBIT "E"



ALBION

Minerals · Science · Chelates

July 10, 2014

Kirkman Group Inc.
10639 Professional Circle
Reno, NV 89521

RE: MAGNESIUM BISGLYCINATE CHELATE BUFFERED LABELING

Dear Cory Bowey; Allison Suitter,

You are receiving this letter because our records indicate that you have recently purchased Magnesium Bisglycinate Chelate Buffered (Product Number 3451) from Albion. Albion's Product Data Sheet, which accompanies this letter, indicates the presence of magnesium oxide in this ingredient. Magnesium oxide is, of course, the buffering agent in this buffered product.

Albion has recently received some inquiries about our customers having not disclosed the presence of magnesium oxide on their labels. While Albion does not control your product labels and you are solely responsible for the compliance of your product labels with FDA Regulation, Albion's position is that magnesium oxide should be disclosed on the labels of products which incorporate Albion's Magnesium Bisglycinate Chelate Buffered ingredient. Albion encourages you to carefully consider FDA Regulations found in the Code of Federal Regulation, and all other applicable laws and regulations, and to obtain reliable legal guidance, in determining how to label your products.

You may have received inquiries from persons asking about your labeling of products containing Magnesium Bisglycinate Chelate Buffered. Albion is aware of certain individuals who are seeking to file class action lawsuits against companies which are not disclosing the presence of magnesium oxide on their labeling as a component of Magnesium Bisglycinate Chelate Buffered. We urge you to proceed cautiously when dealing with these inquiries that may be used to determine if your company is a potential target for a class action lawsuit.

If you have any questions about the subject matter of this letter, please contact me and I will be happy to talk to you.

Regards,

ALBION LABORATORIES, INC.

Justine M Angelico

JUSTINE ANGELICO
DIRECTOR OF CUSTOMER CARE
jangelico@albionminerals.com
(801) 728-1032

ALBION | 101 North Main Street, Clearfield, Utah 84015 USA | [P] 801·773·4631 | [F] 801·773·4633 | www.AlbionMinerals.com

KIR 0004