THE HONORABLE MARSHA J. PECHMAN

1

2

3

4

5

6

7

8                              U.S. DISTRICT COURT
9                    WESTERN DISTRICT OF WASHINGTON

10  DONNA COPELAND, on behalf of herself and
    all others similarly situated,
11
                                                    NO. 2:15-cv-00585-MJP
                          Plaintiff,
12                                                  **FIRST AMENDED COMPLAINT –
                                                    CLASS ACTION**
13          vs.
                                                    **Demand for Jury Trial**
14  ALBION LABORATORIES, INC.; SEEKING
    HEALTH, LLC; and DESIGNS FOR HEALTH,
15  INC.,

16                        Defendants.

17

18

19          Plaintiff, Donna Copeland ("Copeland" or "Plaintiff"), by and through her undersigned

20  counsel, respectfully files this First Amended Class Action Complaint on behalf of herself and

21  a class of similarly situated individuals who purchased from Designs for Health, Inc. ("Designs

22  for Health") and Seeking Health, LLC ("Seeking Health"), a blended form of magnesium

23  glycinate and magnesium oxide known as Magnesium Bisglycinate Chelate Buffered, in which

24  magnesium oxide was not listed in the supplement facts panel on the label, in contravention of

25  the law.

26

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Albion Laboratories, Inc. ("Albion") manufactures and distributes the Magnesium Bisglycinate Chelate Buffered that Designs for Health and Seeking Health sold. As part of their contractual relationship, Albion has the right to control what Designs for Health and Seeking Health put on their labels. Here, Designs for Health and Seeking Health brand their labels with Albion's TRAACS® and Gold Medallion® logos, registered trademarks that consumers recognize as symbols of the quality of Albion's products.

## I.  NATURE OF THE CASE

1.     As consumers have become increasingly health conscious, dietary supplements have become a multi-billion dollar industry. To navigate the vast array of vitamin and mineral products available on the market today, consumers rely on honest and accurate labels. Unfortunately, some companies attempt to maximize their profits by mislabeling their supplements in order to trick consumers into paying a price premium for an inferior product. Defendants are such companies.

2.     Defendants sell a magnesium supplement that contains two kinds of magnesium: magnesium glycinate ("Glycinate") and magnesium oxide ("Oxide"). It is well-known that Glycinate is superior to Oxide because it is a "chelated" magnesium, which is more easily absorbed into the body and causes fewer negative side effects. Accordingly, the wholesale and retail prices for Glycinate are much higher than for Oxide.

3.     In an effort to cut costs while maintaining demand, Albion blended Glycinate with Oxide ("Albion's Blended Product") and sold it to the other named Defendants ("re-sellers"), who did not list the inferior magnesium, Oxide, anywhere on their Blended Product labels. They did, however, list the superior magnesium, Glycinate, as the only magnesium ingredient in the "Supplement Facts" panel on their Blended Product labels. This enabled the re-sellers to charge a price premium directly to consumers for their Blended Products by charging the same price that would be charged for pure Glycinate.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

4.    Under the false impression that Defendants' Blended Products were and are pure Glycinate, tens of thousands of consumers have paid a price premium for an inferior form of magnesium, thereby padding Defendants' pockets with undeserved profits.  This suit seeks redress on behalf of consumers who paid a price premium for Defendants' Blended Products under the reasonable, but mistaken, belief that they were pure Glycinate.

## II.  PARTIES

5.    Plaintiff Copeland resides in Spring, Texas, and is a Texas citizen.  She started taking magnesium a few years ago on the advice of her doctor for breast pain due to fibrocystic breasts.  Initially, Plaintiff was taking magnesium citrate, but later, she learned that the absorption rate for the citrate form was low.  Plaintiff's sister's doctor recommended magnesium glycinate and specifically told Plaintiff that she thought Designs for Health was a reputable brand.  Upon review of the Product's label, Copeland learned that the Product was supplied by Albion, as it was branded with Albion's TRAACS® and Gold Medallion® logo recognition.  Relying on Albion's labeling and verification of the Blended Product's purported quality, Plaintiff decided to purchase Designs for Health Magnesium Glycinate Chelate ("Designs for Health's Blended Product").

6.    In August of 2013, Plaintiff purchased her first bottle of Designs for Health's Blended Product.

7.    In December of 2014, Plaintiff went to purchase another bottle of Designs for Health's Blended Product when she noticed a review on Amazon.com about the product. It was there that Plaintiff learned that Designs for Health's Blended Product was not pure Glycinate, but that it was blended with Oxide.  Plaintiff immediately stopped taking Designs for Health's Blended Product and searched for another brand she believed was pure Glycinate.  It was then that Plaintiff discovered Seeking Health Optimal Magnesium ("Seeking Health's Blended Product"), which she believed was pure Glycinate.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

8.    Plaintiff took Seeking Health's Blended Product for the first time on or about January 5, 2015, under the impression that it was pure Glycinate.  Upon review of Seeking Health's Blended Product's label, Copeland learned that Seeking Health's Blended Product was supplied by Albion, as it was branded with Albion's TRAACS® and Gold Medallion® recognition.  Relying on Albion's labeling and verification of Seeking Health's Blended Product's purported quality, Plaintiff decided to purchase Seeking Health's Blended Product.  Shortly thereafter, Plaintiff discovered that this brand also was adulterated with Oxide.

9.    After learning that Seeking Health's Blended Product was not pure Glycinate, Plaintiff stopped taking it and purchased another product that is pure Glycinate.

10.    It is important to Plaintiff to get maximum absorbency from magnesium because she plans to start an Iodine protocol in an effort to reduce the severity of her fibrocystic breasts, and she believes magnesium is a very important cofactor of that protocol.

11.    Were it not for Defendants' unfair and deceptive practices, Plaintiff and the Class members would not have purchased the Blended Products or paid a price premium to purchase them.  If the Blended Products did in fact contain pure Glycinate, as promised, rather than also containing Oxide, Plaintiff would have continued to purchase the Blended Products and pay the price premium.

12.    Defendant Albion is a corporation organized under the laws of the State of Utah, with its headquarters located at 101 North Main Street, Clearfield, Utah, 84015.  Albion, therefore, is a citizen of Utah.  Albion manufactures and supplies mineral amino acid chelate nutrition to industries worldwide.  Albion's development, manufacturing, and decision-making are centered in Utah.

13.    Defendant Seeking Health, LLC ("Seeking Health"), is a corporation organized under the laws of the State of Washington.  Seeking Health's headquarters are located at 3140 Mercer Avenue, Bellingham, Washington, 98225.  Seeking Health, therefore, is a citizen of

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Washington.  Seeking Health has marketed and sold nutrition supplements, including the Seeking Health's Blended Product, worldwide.

14.    Defendant Designs for Health, Inc. ("Designs for Health"), is a corporation organized under the laws of the State of Connecticut.  Designs for Health's headquarters are located at 980 South Street, Suffield, Connecticut, 06078.  Designs for Health, therefore, is a citizen of Connecticut.  Designs for Health has marketed and sold nutrition supplements, including the Designs for Health's Blended Product, worldwide.

## III.  JURISDICTION AND VENUE

15.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, under 28 U.S.C. § 1332(d).  Jurisdiction is proper because: (1) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs; (2) the named Plaintiff and the Defendants are citizens of different states; and (3) the proposed class has more than 100 members.  28 U.S.C. § 1332(d)(2), (5)(B).

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendants have marketed and sold the Blended Products at issue in this action within this judicial district and have done business within this judicial district.

## IV.  GENERAL ALLEGATIONS

17.    Consumers are increasingly health conscious and often rely on vitamin and mineral supplements to promote health and prevent disease.  A multibillion dollar industry, nutrition supplements have become a mainstay of the American diet and lifestyle.  However, because most supplements are purchased over-the-counter, and particularly in the era of self-diagnosis on the Internet, consumers depend on the accuracy and honesty of labels so that they are able to make informed decisions about which products to purchase for their health needs.

18.    Magnesium has become one of the best-selling minerals on the market, as studies show that a staggering 68% of Americans do not consume the recommended daily intake of

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  magnesium.  Magnesium is critical to a wide variety of essential bodily functions, including

2  protein synthesis, muscle and nerve function, bone development, blood glucose control, and

3  blood pressure regulation.  Magnesium deficiencies have also been linked to insomnia.

4  Magnesium supplements are therefore growing in popularity as consumers learn about the

5  consequences of a deficiency in this essential mineral.

6      19.    Because magnesium must be combined with another substance to absorb into the

7  body properly, there are numerous types of magnesium supplements.  The types of magnesium

8  supplements are defined by the substances with which the magnesium is combined, and

9  include:  glycinate, malate, citrate, threonate, taurate, chloride or lactate, carbonate, sulfate or

10 hydroxide, and oxide.  The greater the "bioavailability," the greater the absorption.

11     20.    Glycinate is one of the most bioavailable forms of magnesium "and is typically

12 ideal for those who are trying to correct a deficiency."[1]  Oxide, by contrast, is one of the least

13 bioavailable forms of magnesium and has an unpleasant laxative effect.[2]  One study found that

14 Oxide only has a 4% absorption rate.[3]  Another study found that Glycinate has a more

15 immediate and higher overall absorption rate in, and is better tolerated by, patients who have

16 difficulty absorbing and retaining magnesium.[4]  The University of Kansas Medical Center

17 clearly states: "Magnesium oxide is poorly absorbed, and hence likely to cause diarrhea.  We

18 do not recommend magnesium oxide."[5]

19

20 1. http://articles.mercola.com/sites/articles/archive/2012/12/17/magnesium-benefits.aspx; *see also*
   http://www.huffingtonpost.com/dr-mark-hyman/magnesium-the-most-powerf_b_425499.html (recommending Mg

21 citrate, glycinate, taurate, or aspartate).

22 2. http://www.emed.com.au/nutrition/vitamin-mineral-info/magnesium/not-all-magnesium-supplements-are-the-
   same/ http://www.emed.com.au/3438 (explaining that Mg oxide is        used as a laxative).

23

24 3 Firoz M, Graber M. (2001) Bioavailability of US commercial magnesium preparations. Magnesium Research.
   14(4):257-62.

25 4. Schuette S.A. et al.(1994) Bioavailability of magnesium diglycinate vs magnesium oxide in patients with ileal
   resection. J Parenter Enteral Nutr. 18(5):430-5.

26

27 5. http://www.kumc.edu/school-of-medicine/integrative-medicine/the-benefits-of-magnesium.html.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

21.    Livestrong.com also recommends magnesium Glycinate over magnesium Oxide:

> "If you are suffering from a magnesium deficiency, magnesium glycinate or other forms of chelated magnesium may be your best bet because they are so well absorbed, says Carolyn Dean, author of 'The Magnesium Miracle.' Your body may tolerate magnesium glycinate better than magnesium oxide, which is commonly used for this purpose, notes Donald Goldberg, lead author for 'The Best Supplement for Your Health.'"[6]

22.    Dr. Andrew Weil, a well-known naturopath, recommends Glycinate over Oxide.[7]

23.    Even Albion's own studies, which are available on the Internet, promote the superiority of Glycinate as compared to Oxide, as the following illustrates:



24.    Unsurprisingly, consumers believe Glycinate is superior to Oxide. This is demonstrated by numerous blog posts espousing Glycinate over Oxide. For example, in an online forum with a blog post entitled "Bulletproof Magnesium Thread," a member wrote: "Magnesium Glycinate – The most bioavailable form of Magnesium …… Least likely to cause loose stools" and "Magnesium Oxide – VERY POORLY ABSORBED – out of 400 mg only AT MOST 80 mg of magnesium absorbed by the body. The worst form of magnesium." In

---

6. http://www.livestrong.com/article/271338-what-are-the-benefits-of-magnesium-glycinate/.

7. http://www.drweil.com/drw/u/ART02805/magnesium.html (Dr. Weil recommends "magnesium citrate, chelate, or glycinate, and avoid magnesium oxide, which can be irritating to the digestive tract").

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

another blog post on MedHelp.org, a member wrote that Glycinate is one of the best forms of magnesium and that "Chelated magnesium [which includes Glycinate] is far better absorbed than magnesium oxide."

25.    In part due to this increased consumer awareness and demand for Glycinate, Glycinate is significantly more expensive than Oxide.  As noted by the Huffington Post, Oxide is one of "the cheapest and most common forms [of magnesium] found in supplements."[8]  For example, Solaray, a supplement retailer, offers Glycinate for $12.98 per bottle, which contains 120 capsules and 400 milligrams ("mgs") per serving (where each serving is four capsules).  This computes to $0.11/capsule or $0.001/mg.  By contrast, Nature Made, another supplement retailer, offers Oxide for $2.97 per bottle, which contains 100 capsules and 250 mg per serving (where each serving is one capsule).  This calculates to $0.03/capsule or $0.0001/mg.  Therefore, as between these two retailers, Glycinate costs *ten times* more per mg than Oxide, evidencing the price premium consumers pay for Glycinate over the less expensive Oxide.

26.    In addition to increased consumer demand, Glycinate is also more expensive because it is more costly to manufacture.  Glycinate is a "chelated" form of magnesium, which means it is combined with another substance to increase absorption and bioavailability.  To chelate its Glycinate, Albion uses a six-stage chelation process described in a promotional video on Albion's homepage.[9]  The machinery and expertise required to manufacture Glycinate are very expensive.  Oxide is not chelated, and is therefore far less costly to manufacture.

---

8. http://www.huffingtonpost.com/dr-mark-hyman/magnesium-the-most-powerf_b_425499.html ("Avoid magnesium carbonate, sulfate, gluconate, and oxide.  They are poorly absorbed (and the cheapest and most common forms found in supplements).").

9. http://www.albionminerals.com/

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

27.    To reduce these costs while maintaining consumer demand, Albion blended Oxide with Glycinate, and in some cases did not inform its re-sellers that it had done so.  Albion's Product Data Sheet lists Glycinate and Oxide as ingredients.  Yet the labeling on Defendants' final products—labeling that Albion has the right to control—lists Glycinate, but entirely omits Oxide, as follows:






TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

28.    Such deceptive, unfair, and unconscionable labeling leads a reasonable consumer to believe that the Blended Products are Glycinate, when in fact they are blended with an inferior form of magnesium, Oxide.

29.    Like other members of the Class, Plaintiff purchased the Blended Products believing them to have the qualities she sought (pure Glycinate), based on the unlawful and deceptive misrepresentations of Defendants.

30.    Instead of receiving a product that has the advantages of pure Glycinate, and that is worth the value of pure Glycinate, Plaintiff and members of the Class received Blended Products containing both Glycinate and the inferior Oxide.

31.    The Blended Products were worth less than what Plaintiff and members of the Class paid for them, and Plaintiff and members of the Class lost monies as a result of Defendants' deception, in that they did not receive what they paid for.

32.    Defendants therefore earn a substantial additional profit by knowingly and intentionally misleading consumers into believing that the Blended Products are pure Glycinate.

33.    Moreover, Defendants' deceptive labeling practice defies the FDA's explicit instructions.  A federal regulation, 21 C.F.R. § 101.36, covers nutrition labeling of dietary supplements and provides that "the label of a dietary supplement that is offered for sale shall bear nutrition labeling in accordance with this regulation unless an exemption is provided for the product in paragraph (h) of this section."  21 C.F.R. § 101.36(a).  Defendants are not exempt under 21 C.F.R. § 101.36(h)(3).

34.    Defendants must abide by the labeling requirements set forth in 21 C.F.R. § 101.36.  Specifically, Section 101.36(b)(2) applies to dietary ingredients and its subcomponents that have a "Reference Daily Intake" or "Daily Reference Value" under Section 101.9(c). Magnesium's daily reference value is readily available online:

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

| AGE | MALE | FEMALE |
|-----|------|--------|
| 1–3 | 80 mg | 80 mg |
| 4–8 | 130 mg | 130 mg |
| 9–13 | 240 mg | 240 mg |
| 14–18 | 410 mg | 360 mg (400 mg during pregnancy) |
| 19–30 | 400 mg | 310 mg (350 mg during pregnancy) |
| 31+ | 420 mg | 320 mg |

Section 101.9(c)(8)(iv) also includes magnesium as one of the minerals that is "essential" to human nutrition, and magnesium is explicitly referenced in Section 101.36(b)(2)(B). Section 101.36(b)(2) therefore applies to Defendants, and requires such magnesium to be declared "when [it is] added to the product for purposes of supplementation, or when a claim is made about [it]." Because Oxide is added to the Blended Product for purposes of supplementation and claims are made about its nutrient content and health, the Oxide in the Blended Products must be declared.

35.     Although Defendants list magnesium, they only list Glycinate, and not Oxide. This violates Section 101.36(d), which requires "source ingredients" to be disclosed either in the nutrition label or "outside and immediately below the nutrition label." Further, "[w]hen source ingredients are listed within the nutrition label, and two or more are used to provide a single dietary ingredient, all of the sources shall be listed within the parentheses in descending order by weight." 21 C.F.R. § 101.36(d)(2).

36.     Glycinate and Oxide are source ingredients. Therefore, not only must Defendants disclose the Oxide contained in the Blended Product, they must also list the respective weights, in terms of milligrams, of the Glycinate and Oxide. Dietary Supplement Health and Education Act of 1994, Pub. L. No. 103–417, § 7, 108 Stat. 4325 (1994) (codified as 21 U.S.C. § 343(q)(5)(F)).

37.     Even if the Blended Products were deemed a "proprietary blend," pursuant to Section 101.36(c)(2), each ingredient must nevertheless be listed in descending order of

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

predominance by weight, in accordance with Section 101.36(b)(3). Thus, Defendants may not circumvent the FDA's disclosure requirements by simply calling the Blended Products "proprietary"; nor can Defendants circumvent state consumer protection law by falsely representing the Blended Products. In fact, Albion must be aware of this disclosure requirement, as it discloses all of the ingredients of a proprietary blend contained in a prostate health supplement called Natural Prostate Health, for which Albion supplies some of the underlying ingredients, as the following image of Natural Prostate Health's Supplement Facts panel illustrates[10]:

| Supplement Facts | | |
|---|---|---|
| Serving Size: 2 Capsules | | |
| Servings Per Container: 30 | | |
| | Amount Per Serving | % DV* |
| Zinc | 15 mg | 100% |
| Selenium | 25 mcg | 36% |
| Proprietary Blend | 2,000 mg | † |
| Saw Palmetto Fruit Extract | | |
| Beta-Sitosterol with Phytosterols | | |
| Pygeum Africanum Bark Extract | | |
| Cranberry Extract | | |
| Stinging Nettle Root Extract | | |
| Grape Seed Extract | | |
| Evening Primrose Seed Oil (for GLA, ALA, PLA) | | |
| Pumpkin Seed Oil | | |

* Percent Daily Value (DV) is based on a 2000 calorie diet.
† Daily Value not established.

Defendants therefore knowingly and intentionally hide the fact that the Blended Products contain Oxide so they can turn an additional profit at the consumer's expense.

38.    Plaintiff conducted additional research on the Blended Products and discovered that Swanson Health Products was the only company that discloses the fact that its similar product contains Oxide, and only in the "other ingredients" section below the more prominent

---

10. http://shop.enivausa.com/487786/en-us/product.aspx?id=26005.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Supplement Facts panel, which lists Glycinate. *See* Swanson Ultra Albion Chelated Magnesium Glycinate Supplement Facts below:

## Supplement Facts

Serving Size 1 Capsule

| | Amount Per Serving | % Daily Value |
|---|---|---|
| Magnesium (from TRAACS®magnesium glycinate chelate buffered) | 133 mg | 33% |

Other ingredients: Gelatin, magnesium oxide, citric acid, maltodextrin, may contain one or more of the following: microcrystalline cellulose (plant fiber), magnesium stearate, silica.

39.      Pursuant to an agreement with its re-sellers, Albion has the right to control, and did in fact control, the nature and content of certain re-sellers' Blended Products' labels, and in doing so explicitly or implicitly instructed its re-sellers not to disclose that Oxide was an ingredient of the Blended Products.

40.      Integrated Supplements, an Albion re-seller which purchased Albion's Blended Product from Albion and sold it to the public as Integrated Supplements Bio-Available Magnesium, stated:

"* * * Where we source our raw materials from Albion Nutrition (and are proud to do so), we label all ingredients in strict accordance with the requirements legally set forth by Albion Nutrition. If we didn't label our product exactly as Albion dictates, we simply couldn't advertise the fact that we use their ingredients."

41.      In the comments section of a review of Integrated Supplements Bio-Available Magnesium, Integrated Supplement's representative stated:

"I stated previously, I cannot speak for other companies (or speculate as to the reasons for their actions), but I will, again, speak the truth. Albion, did review, direct, and approve the current content of our label, with instructions to label the

FIRST AMENDED COMPLAINT – CLASS ACTION - 13
CASE NO. 2:15-cv-00585-MJP

ingredient in question as TRAACS® Magnesium Glycinate Chelate Buffered. There is also a contract in place between us which governs all Albion trademarks and descriptions. I am not "hiding behind them" or "shifting the blame." These are simply the facts (for which I have documentation). Where we labeled the ingredient exactly as they stated, and exactly as many (but perhaps not all) other brands do, there was never any attempt whatsoever to mislead. They are the trademark holder on the ingredient, so I think it was reasonable of us to assume that the descriptions they instructed us to use were legally allowed (especially considering the numerous other brands that used the same ingredient, and labeled it the exact same way). Again, if this proves to be an incorrect assumption, we, with Albion, will rectify it.

If changes are required, they won't just affect us, but MANY products which contain the ingredient. If you truly want to bring about change in this area, we're small potatoes – I'd recommend you go right to the source and try and appeal to Albion, themselves. Again, I stand behind everything I've said regarding Albion. I have the email correspondences and contracts to support my statements regarding their labeling requirements, and more importantly, I want to reiterate, again, that we proudly use their ingredients. * * *"

42.  Another Albion re-seller, Nuvari Life, acknowledged that Oxide should have been listed as an ingredient in its Blended Product and apologized for the mislabeling. Nuvari Life, a re-seller of Nuvari Magnesium Ultra, stated on its product page on Amazon:

"We have conducted further research into this matter and have spoken further with our supplier and Albion. It appears that our supplier failed to list the following other ingredients in the supplement facts provided for our label: magnesium oxide, citric acid, maltodextrin, silica. These ingredients are part of the formula manufactured by Albion. They are not added in afterwards by our supplier. Nevertheless, it is required that they appear in the ingredients. We are very disappointed to learn that our labeling is incorrect. We will be closing our Amazon listing this week in order to have our product relabeled and the ingredients listed properly."

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

43.     Through its ability to control, and actual control, over what ingredients re-sellers list on labels that include the Blended Products, Albion supplies the Blended Products to consumers, and is a participant in the consumer transaction.

44.     In addition, the label of the Blended Products identifies Albion as a supplier to consumers in the marketplace.  For example, Albion's name and "Gold Medallion®" seal is on the Blended Products' labels.  The Blended Products are also labeled with Albion's TRAACS® registered trademark.  The TRAACS® (The Real Amino Acid Chelate System) trademark is placed on bottles so consumers are aware that Albion is supplying the Blended Product.

45.     For example, the Designs for Health's Blended Product that Plaintiff purchased contained the Albion Gold Medallion®, which Plaintiff read and relied on in making her purchase.  It also contained the TRAACS® trademark.  Although the label highlights magnesium glycinate chelate buffered, conspicuously absent is any mention of magnesium oxide.  Nor does the label break out the percentages of each active ingredient.  *See* paragraph 27, *supra*.  Based on Albion's right to control what resellers put on their labels, and other re-sellers' reports that Albion directed such marketing decisions, Plaintiff has reason to believe that Albion also exercised its right to control Designs for Health's labels.

46.     Likewise, the Seeking Health's Blended Product that Plaintiff purchased also contained the Albion Gold Medallion® and the TRAACS® trademarks on the label, which Plaintiff read and relied on in making her purchasing decision.  The statement "TRAACS and the Albion Medallion design are registered trademarks of Albion Laboratories, Inc." is also on the label.  This product also fails to mention magnesium oxide (although magnesium glycinate chelate buffered is listed), and further fails to break out the percentages of each active ingredient.  *See* paragraph 27, *supra*.  Based on Albion's right to control what resellers put on their labels, and other re-sellers' reports that Albion directed such marketing decisions, Plaintiff has reason to believe that Albion also exercised its right to control Seeking Health's labels.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

47.    Albion's resellers, including Designs for Health and Seeking Health, are also suppliers.

48.    While Albion touts the purity of the Blended Products it supplies to the public, it at the same time knowingly fails to disclose that it replaces high quality Glycinate with significantly less-expensive Oxide, for its own economic benefit, to the detriment of consumers.

49.    Such deceptive labeling leads a reasonable consumer to believe that the Blended Products are pure Glycinate, when in fact they are blended with an inferior form of magnesium. Like other members of the Class, Plaintiff purchased the Blended Products believing them to have the qualities she sought (pure Glycinate), based on the unlawful and deceptive misrepresentations of Defendants.  Instead of receiving the Blended Products that had the advantages of pure Glycinate, Plaintiff and members of the Class received a product containing both Glycinate and the inferior Oxide.  Defendants' Blended Products were worth less than what Plaintiff and members of the Class paid for them, and Plaintiff and members of the Class lost monies as a result of Defendants' deception in that they did not receive what they paid for. Defendants therefore earn a substantial additional profit by knowingly and misleading consumers into believing that the Blended Products are pure Glycinate.

50.    Notwithstanding Albion's directives to its re-sellers, Defendant re-sellers are required to abide by the FDA regulations set forth above, and to not circumvent state consumer protection laws.  Defendant re-sellers could and should have resisted Albion's instructions by either listing Oxide as an ingredient on the Supplement Facts Panel, or refusing to purchase from Albion Albion's Blended Product.

51.    Defendant re-sellers therefore cannot claim innocence; by only listing "Magnesium Glycinate" as an ingredient on the Supplement Facts panel and failing to disclose Oxide as an ingredient, Defendant re-sellers were able to charge an unwarranted price premium for an adulterated product.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# V.  CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action on her own behalf and, pursuant to Federal Rule of Civil Procedure 23, on behalf of a class and various subclasses as pled below of all persons who, during the period from 2011 through the present, purchased the Blended Products (the "Class").  Excluded from the Class are Defendants and any parent, subsidiary, or affiliate of Defendants.

53.    Plaintiff brings this action as a class action for the following reasons:

    a.    The Class consists of tens of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

    b.    There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

        i.    Whether Defendants violated the provisions of law set forth in the causes of action below;

        ii.    The wholesale and retail prices of the Blended Products, Glycinate and Oxide;

        iii.    The cost of manufacturing the Blended Products, Glycinate, and Oxide;

        iv.    Whether a reasonable consumer would believe that the Blended Products contain Glycinate without Oxide;

        v.    Whether Albion required Defendant re-sellers to include Glycinate, and to exclude Oxide, from the Blended Products' labeling;

        vi.    Whether Defendants knew the Blended Products were mislabeled;

        vii.    Whether Defendants knowingly deceived consumers;

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

viii.  Whether Defendants intentionally deceived consumers;

ix.  Whether Defendants' labeling and pricing scheme constitutes an unfair method of competition;

x.  Whether Defendants' labeling and pricing scheme is an unconscionable act or practice;

xi.  Whether Defendants' labeling and pricing scheme is an unfair or deceptive act or practice;

xii.  Whether Defendants have been unjustly enriched by their labeling and pricing scheme;

xiii.  Whether Defendants should be enjoined from continuing their labeling and pricing scheme;

c.  The Claims asserted by Plaintiff are typical of the claims of the members of the Class;

d.  Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class action and complex litigation, including class action litigation involving state statutes protecting consumers from deceptive and unfair trade practices;

e.  Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants;

f.  Defendants have acted on grounds that apply generally to the Class, *i.e.*, mislabeling and charging an unjustifiable price premium for the Blended Product, so that final injunctive relief prohibiting Defendants from continuing their unfair and deceptive practice is appropriate with respect to the Class as a whole; and

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

g.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i.    Absent a class action, Class members as a practical matter will be unable to obtain redress; Defendants' violations will continue without remedy; additional consumers will be harmed; and Defendants will continue to reap and retain their ill-gotten gains;

ii.    It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

iii.    When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

iv.    A class action will permit an orderly and expeditious administration of Class claims and foster economies of time, effort, and expense;

v.    This lawsuit presents no difficulties that would impede its management by the Court as a class action; and

vi.    Defendants have acted on grounds generally applicable to Class members, making Class-wide monetary and injunctive relief appropriate.

## VI.  FIRST CAUSE OF ACTION

**(Violation of the Washington Consumer Protection Act,
RCW § 19.86 *et seq*. – Non-Per Se Deceptive Business Practices)**

**(On behalf of Plaintiff and members of the Nationwide Class Against Defendant Seeking Health, LLC Only)**

54.    Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

55.   The Washington Consumer Protection Act declares unlawful (i) an unfair or deceptive act or practice, (ii) occurring in trade or commerce, (iii) with a public interest impact, and (iv) which causes injury to consumers.

56.   Seeking Health is a "person" within the meaning of the Washington Consumer Protection Act, RCW 19.86010(1), and conducts "trade" and "commerce" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(2).

57.   Plaintiff and the other Class members are "persons" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1).

58.   At all relevant times, Seeking Health engaged deceptive acts or practices in the conduct of its business by omitting statements of material fact regarding the Blended Products' ingredients, performance characteristics and benefits that it did not have and charged a price premium for an inferior product.  Specifically, Seeking Health failed to disclose that the Blended Products contained Oxide, an inferior form of magnesium, and therefore were not pure Glycinate.

59.   Seeking Health's deceptive acts or practices have occurred in its trade or business and were and are capable of deceiving a substantial portion of the public.  As such, Seeking Health's general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

60.   The facts concealed from Plaintiff and the Class are material in that a reasonable consumer considered the Blended Products' ingredients, performance characteristics and benefits that were represented in making their purchase decision and paid a price premium for such.

61.   As a direct and proximate result of Seeking Health's deceptive acts or practices, Plaintiff and Class members suffered injury in fact.  As a result of Seeking Health's deceptive practices, Plaintiff and Class members were overcharged for the Blended Product and thus lost money.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

62.    Plaintiff and the Class are therefore entitled to an order enjoining the conduct complained herein; actual damages; treble damages pursuant to RCW 19.86.090; costs of suit, including a reasonable attorney's fee; and such further relief as the Court may deem proper.

63.    Plaintiff and the Class are also entitled to equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of the Class members, or all or part of the ill-gotten profits Seeking Health received from the sale of the Blended Products.

### VII.  SECOND CAUSE OF ACTION

**(Violation of the Washington Consumer Protection Act, RCW § 19.86 et seq. – Non-Per Se Unfair Business Practices)**

**(On behalf of Plaintiff and members of the Nationwide Class Against Defendant Seeking Health, LLC Only)**

64.    Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

65.    Seeking Health is a "person" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1), and conducts "trade" and "commerce" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(2).

66.    Plaintiff and other Class members are "persons" within the meaning of the Washington Consumer Protection Act, RCW 19.86.010(1).

67.    Seeking Health engaged in unfair acts or practices of its business by omitting statements of material fact regarding the Blended Products' ingredients, performance characteristics and benefits that it did not have and charged a price premium for an inferior product. Seeking Health failed to disclose that the Blended Products contained Oxide, an inferior form of magnesium, and therefore were not pure Glycinate.

68.    Seeking Health's failure to disclose the true nature of the Blended Products is unfair because these acts or practices offend public policy as it has been established by statutes, regulations, the common law or otherwise.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    69.    Seeking Health's failure to disclose the true nature of the Blended Products is

2    unfair because this act or practice (1) causes substantial financial injury to Plaintiff and Class

3    members; (2) is not outweighed by any countervailing benefits to consumers or competitors;

4    and (3) is not reasonably avoidable by consumers.

5    70.    Seeking Health's uniform practice of failing to disclose the true nature of the

6    Blended Products and charging a price premium for an inferior product is unfair because this

7    act or practice is immoral, unethical, oppressive and/or unscrupulous.

8    71.    Seeking Health's failure to disclose the true nature of the Blended Products and

9    charging a price premium for an inferior product is unfair because these acts or practices offend

10   public policy as it has been established by statues, regulations, the common law or otherwise.

11   72.    Seeking Health's uniform practice of failing to disclose the true nature of the

12   Blended Products and charging a price premium for an inferior product is unfair because this

13   act or practice (1) causes substantial financial injury to Plaintiff and Class members; (2) is not

14   outweighed by any countervailing benefits to consumers or competitors; and (3) is not

15   reasonably avoidable by consumers.

16   73.    Seeking Health's uniform practice of failing to disclose the true nature of the

17   Blended Products and charging a price premium for an inferior product is unfair because this

18   act or practice is immoral, unethical, oppressive and/or unscrupulous.

19   74.    Seeking Health's unfair acts or practices have occurred in its trade or business and

20   were and are capable of injuring a substantial portion of the public.  As such, Seeking Health's

21   general course of conduct as alleged herein is injurious to the public interest, and the acts

22   complained of herein are ongoing and/or have a substantial likelihood of being repeated.

23   75.    As a direct and proximate result of Seeking Health's unfair and deceptive acts and

24   practices in the conduct of its business, Plaintiff and the Class members have suffered injury in

25   fact.  As a result of Seeking Health's unfair practices, Plaintiff and the Class members were

26

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

charged a price premium for an inferior Product and lost monies as a result of Seeking Health's deception in that they did not receive what they paid for.

76.     Plaintiff and the Class are therefore entitled to an order enjoining the conduct complained of herein; actual damages; treble damages pursuant to RCW 19.86.909; costs of suit, including a reasonable attorney's fee; and such further relief as the Court may deem proper.

77.     Plaintiff and the Class are also entitled to equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of the Class members, of all or part of the ill-gotten profits Seeking Health received from the sale of the Blended Products.

## VIII.  THIRD CAUSE OF ACTION

### (Violations of CUTPA - Conn. Gen. Stat. § 42-110a, *et seq*.)

**(On behalf of Plaintiff and members of the Nationwide Class Against Defendant Designs for Health, Inc. Only)**

78.     Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

79.     Plaintiff and members of the proposed Class are consumers within the meaning of CUTPA, and the Blended Products are goods within the meaning of the CUTPA.

80.     Designs for Health, through its conduct, is engaged in trade or commerce within the meaning of the CUTPA, and the purchase of the Blended Products by Plaintiff and other members of the proposed Class constitutes consumer transactions within the meaning of the CUTPA.

81.     By engaging in the foregoing conduct, Designs for Health committed unfair and deceptive acts or practices in the conduct of trade or commerce in violation of CUTPA, and particularly, but without limitation, Designs for Health engaged in unfair and deceptive acts and practices by and through the following acts and omissions:

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

a.    Designs for Health made false and/or misleading statements of material fact regarding the Blended Products, which statements were likely to deceive the public;

b.    Designs for Health omitted and concealed material facts regarding the Blended Products from Plaintiff and the Class regarding the Blended Products; and

c.    Designs for Health knew, or were reckless in not knowing, that its statements about the content of the Blended Products, were false and/or misleading.

82.    Designs for Health knew or should have known that these acts and omissions violated CUTPA, as they were and are violative of public policy, unfair, unethical, oppressive, and unscrupulous and caused substantial injury to consumers, including Plaintiff and other members of the proposed Class.

83.    Designs for Health used or employed these acts or practices in willful or knowing violation of CUPTA.

84.    As a result of the unfair and deceptive conduct of Designs for Health, Plaintiff and members of the proposed Class have suffered ascertainable losses within the meaning of Conn. Gen. Stat. § 42-110g(a).  Plaintiff and members of the Class have suffered injury in fact, loss of money or property in the form of, *inter alia*, monies spent to purchase the Blended Products, or the premium paid for the Blended Products, and otherwise have been damaged.

85.    Plaintiff and members of the proposed Class are entitled to compensatory damages from Designs for Health for the economic and non-economic damages identified herein, together with equitable and declaratory relief and other appropriate damages, including punitive damages, attorneys' fees, and costs of suit.

86.    Designs for Health's labeling and pricing scheme constitutes a deceptive act because it is a representation, omission, or practice that that is likely to mislead a consumer

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

acting reasonably under the circumstances, to the consumer's detriment.  Designs for Health represents that the Blended Products contain Glycinate but omit the fact that it also contains Oxide.  This mislabeling practice is likely to mislead a consumer acting reasonably under the circumstances into believing that the Blended Products are pure Glycinate.  As a result of this reasonable but erroneous belief, tens of thousands of consumers have paid and continue to pay an unjustified price premium for Designs for Health's Blended Products.

87.  Designs for Health's labeling and pricing scheme constitutes an unfair practice because it offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  By representing that the Blended Products contained pure Glycinate without Oxide, Designs for Health charged an immoral, unethical, oppressive, and unscrupulous price premium that is substantially injurious to consumers.

88.  As a direct and proximate result of Designs for Health deceptive acts and unfair practices, Plaintiff and the Class paid a price premium for an inferior product.  It was reasonably foreseeable that the Blended Products labels would lead a reasonable consumer to believe that the Blended Products contained pure Glycinate, and that such a consumer would unknowingly pay a price premium for the Blended Products even though they are less expensive to manufacture, have a greater laxative effect, and have lower bioavailability than pure Glycinate.

89.  Consumers suffered actual damages because they paid the fair market price for pure Glycinate when the Blended Products they purchased contained both Glycinate and Oxide, the latter of which is a less expensive and inferior form of magnesium.

90.  The above-described deceptive acts and unfair practices by Designs for Health present an ongoing threat to the Class.  Plaintiff is informed and believes and thereon alleges that Designs for Health has systematically perpetrated deceptive acts and unfair practices upon

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

members of the public and have knowingly and intentionally misled Plaintiff and members of the Class.

## IX.  FOURTH CAUSE OF ACTION

**(Breach of Express Warranty through Connecticut Product Liability Act)**

**(On behalf of Plaintiff and members of the Nationwide Class Against Defendant Designs for Health, Inc. Only)**

91.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

92.    Plaintiff brings this claim on behalf of herself and on behalf of the Class members for breach of express warranty under the common law of the State of Connecticut.

93.    Designs for Health is a "product seller" as defined in Conn. Gen. Stat. § 52-572m(a) and, as a result of Designs for Health's actions alleged herein, Plaintiff and the Class members suffered "harm" as defined in Conn. Gen. Stat. § 52-572m(d).  Designs for Health provided Plaintiff and the Class members with express warranties, including but not limited to warranties that the Blended Products contained only Glycinate, as set forth above.

94.    Designs for Health breached these warranties by providing Blended Products that contained both Glycinate and the significantly inferior, cheaper Oxide, and that otherwise failed to conform to Designs for Health's express warranties.  This breach resulted in damages to Plaintiff and the Class members, who bought Designs for Health's Blended Products but did not receive the goods as warranted, in that the Blended Products did not contain only Glycinate as represented but instead, contained both Glycinate and the significantly inferior, cheaper Oxide.

95.    As a proximate result of Designs for Health's breach of warranties, Plaintiff and the Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for Blended Products that did not conform to what Designs for Health promised in the Blended Products' promotion, marketing, advertising, packaging, and labeling Plaintiff and the Class members were deprived of the

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    benefit of their bargain and spent money on Blended Products that did not have any value or

2    had less value than warranted and/or purchased the Blended Products that they would not have

3    otherwise purchased and used had they known the true facts about them.

4        96.    Designs for Health expressly warranted its goods to the ultimate consumers and

5    the express warranties were the basis of the bargain.  Designs for Health's warranty was

6    expressly disclosed to Plaintiff and the Class members on the Blended Products' packaging and

7    in advertisements and promotional materials for the Blended Products.  In fact, Designs for

8    Health actively promoted the premium nature of the Blended Products' ingredients.

9        97.    Plaintiff and the Class members purchased the Blended Products based upon the

10   above said express warranties.  Plaintiff and the Class members relied on the truthfulness of the

11   express warranties asserted by Designs for Health in deciding to purchase Designs for Health's

12   Blended Products.  Therefore, Plaintiff seeks damages and relief for Designs for Health's

13   Breach of Express Warranty.

## X.  FIFTH CAUSE OF ACTION

**(Violation of the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq.*)
(Deceptive Acts or Practices by Suppliers)**

**(On behalf of Plaintiff and members of the Nationwide Class Against Defendant Albion Laboratories, Inc. Only)**

18       98.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above

19   as if fully set forth herein.

20       99.    Plaintiff brings this claim against Albion, only, on behalf of herself and on behalf

21   of the Class members, for violation of the Utah Consumer Sales Practices Act, Utah Code § 13-

22   11-1 *et seq.* (the "UCSPA").  Specifically, this claim alleges Albion violated several provisions

23   of Utah Code section 13-11-4 by engaging in deceptive acts or practices.

24       100.  Under the UCSPA, "person" means "an individual, corporation, government,

25   governmental subdivision or agency, business trust, estate, trust, partnership, association,

26   cooperative, or any other legal entity."  Utah Code § 13-11-3(5).

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

101.  Plaintiff, the Class members, and Albion are "persons" as the UCSPA defines that term because Plaintiff and each of the Class members are individuals and Albion is a corporation, as set forth above.

102.  Under the UCSPA, "consumer transaction" means, *inter alia*, "a sale . . . of goods . . . to, or apparently to, a person for: (i) primarily personal, family, or household purposes[.]" *Id.* § 13-11-3(2)(a).

103.  Plaintiff and the Class members, on the one hand, and Albion on the other, engaged in "consumer transactions" as the UCSPA defines that term because Plaintiff and the Class members bought the Blended Products primarily for personal, family, or household purposes.

104.  Under the UCSPA, "supplier" means "a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer." *Id.* § 13-11-3(6).

105.  Albion is a "supplier" under Utah Code § 13-11-3(6), which plainly includes a person who regularly engages in or enforces consumer transactions, "whether or not he deals directly with the consumer." *Id.*  Here, Albion manufactured and entered the Blended Products into the stream of commerce and visibly affixed its Gold Medallion and TRAACS trademarks onto its re-sellers' labels, including Designs for Health and Seeking Health, with the knowledge that its product would end up in the hands of consumers.

106.  Under the UCSPA:

> "[A] supplier commits a deceptive act or practice if the supplier knowingly or intentionally:
>
> (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not;
>
> (b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not;
>
> * * * * *

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

2

(e) indicates that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not; [or]

3

4

(j) . . . (ii) fails to honor a warranty or a particular warranty term[.]"

*Id.* § 13-11-4(2)(a), (b), (e), (j)(ii).

5

6

7

8

9

10

11

12

13

14

107.  As fully alleged above, Albion has engaged, and Albion continues to engage, in deceptive acts or practices in violation of Utah Code section 13-11-4(2)(a) because: (i) the Blended Products were the subject of consumer transactions between Plaintiff and the Class members and Albion, (ii) Albion represented that the Blended Products had performance characteristics and benefits that they did not have, since Albion labeled, marketed, and sold the Blended Products as containing only magnesium Glycinate when, in fact, the Blended Products contained a blend of Glycinate and Oxide (which is significantly inferior to and cheaper than Glycinate), and (iii) Albion knew or should have known that the Blended Products did not, in fact, contain only Glycinate and, instead, contained a blend of Glycinate and an inferior, cheaper ingredient, Oxide.

15

16

17

18

19

20

21

22

23

24

108.  As fully alleged above, Albion has engaged, and Albion continues to engage, in deceptive acts and practices in violation of Utah Code section 13-11-4(2)(b) because: (i) the Blended Products were the subject of consumer transactions between Plaintiff and the Class members and Albion, (ii) Albion represented that the Blended Products were of a particular standard, quality, or grade when they were not, since Albion labeled, marketed, and sold the Blended Products as containing only Glycinate when, in fact, the Blended Products contained a blend of Glycinate and Oxide (which is significantly inferior to and cheaper than Glycinate), and (iii) Albion knew or should have known that the Blended Products did not, in fact, contain only Glycinate and, instead, contained a blend of Glycinate and an inferior, cheaper ingredient, Oxide.

25

26

27

109.  As fully alleged above, Albion has engaged, and Albion continues to engage, in deceptive acts and practices in violation of Utah Code section 13-11-4(2)(e) because: (i) the

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Blended Products were the subject of consumer transactions between Plaintiff and the Class members and Albion, (ii) Albion represented that the Blended Products were supplied in accordance with a previous representation when they were not, since Albion labeled, marketed, and sold the Blended Products as containing only magnesium Glycinate when, in fact, the Blended Products contained a blend of Glycinate and Oxide (which is significantly inferior to and cheaper than Glycinate), and (iii) Albion knew or should have known that the Blended Products did not, in fact, contain only Glycinate and, instead, contained a blend of magnesium Glycinate and an inferior, cheaper ingredient, magnesium Oxide.

110.  As fully alleged above, Albion has engaged, and Albion continues to engage, in deceptive acts and practices in violation of Utah Code section 13-11-4(2)(j)(ii) because: (i) in labeling, marketing, and selling the Blended Products to Plaintiff and the Class members, Albion warranted that the Blended Products contained only magnesium Glycinate, yet failed to honor that warranty because the Blended Products in fact contained a blend of Glycinate and Oxide (which is significantly inferior to and cheaper than Glycinate), and (ii) Albion knew or should have known that the Blended Products did not, in fact, contain only Glycinate and, instead, contained a blend of magnesium Glycinate and an inferior, cheaper ingredient, Oxide.

111.  As a direct and proximate result of Albion's improper conduct, Plaintiff and the other members of the Class have suffered damages and ascertainable losses of moneys and/or property in amounts to be determined by the Court or jury, by paying more for the Blended Products than they would have, and/or by purchasing the Blended Products when they would not have done so, had Albion not misrepresented the qualities of the Blended Products as set forth herein.

112.  Plaintiff and the Class members seek relief to the fullest extent allowable under Utah Code section 13-11-19, including but not limited to:  a declaratory judgment under section 13-11-19(1)(a); an injunction under section 13-11-19(1)(b); and actual damages or $2,000, whichever is greater, plus court costs under section 13-11-19(2).

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

113.  Therefore, Plaintiff seeks relief as set forth below.

## XI.  SIXTH CAUSE OF ACTION

**(Violation of the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq.*)**
**(Unconscionable Acts or Practices by Suppliers)**

**(On behalf of Plaintiff and members of the Nationwide Class Against Defendant Albion Laboratories, Inc. Only)**

114.  Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

115.  Plaintiff brings this claim against Albion, only, on behalf of herself and on behalf of the Class members, for violation of the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq.* (the "UCSPA").  Specifically, this claim alleges Albion violated several provisions of Utah Code section 13-11-5 by engaging in unconscionable acts or practices.

116.  As alleged above, Plaintiff, the Class members, and Albion are "persons" as the UCSPA defines that term.

117.  As alleged above, Plaintiff and the Class members, on the one hand, and Albion, on the other, engaged in "consumer transactions" as the UCSPA defines that term.

118.  Albion is a "supplier" under Utah Code § 13-11-3(6), which plainly includes a person who regularly engages in or enforces consumer transactions, "whether or not he deals directly with the consumer."  *Id.*  Here, Albion manufactured and entered the Blended Products into the stream of commerce and visibly affixed its Gold Medallion and TRAACS trademarks onto its re-sellers' labels, including Designs for Health and Seeking Health, with the knowledge that its product would end up in the hands of consumers.

119.  Under the UCSPA:

> An unconscionable act or practice by a supplier in connection with a consumer transaction violates this act whether it occurs before, during, or after the transaction.

Utah Code § 13-11-5(1).

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1     120.  As fully alleged above, Albion has engaged, and Albion continues to engage, in

2    unconscionable acts or practices in violation of Utah Code section 13-11-5 because: (i) the

3    Blended Products were the subject of consumer transactions between Plaintiff and the Class

4    members and Albion, (ii) Albion labeled, packaged, advertised, marketed, and sold the Blended

5    Products to Plaintiff and the Class members using representations that the Blended Products

6    contained only Glycinate when, in fact, the Blended Products contained a blend of Glycinate

7    and Oxide (which is significantly inferior to and cheaper than Glycinate), and thereby Albion

8    engaged in practices that constitute deception, fraud, false pretense, false promise,

9    misrepresentation, unfair practice, and/or concealment, suppression, or omission of material

10   facts in connection with the sale or advertisement of the Blended Products in trade or

11   commerce, and (iii) Albion knew or should have known that the Blended Products did not, in

12   fact, contain only Glycinate and, instead, contained a blend of magnesium Glycinate and an

13   inferior, cheaper ingredient, magnesium Oxide.

14     121.  As a direct and proximate result of Albion's improper conduct, Plaintiff and the

15   other members of the Class have suffered damages and ascertainable losses of moneys and/or

16   property in amounts to be determined by the Court or jury, by paying more for the Blended

17   Products than they would have, and/or by purchasing the Blended Products when they would

18   not have done so, had Albion not misrepresented the qualities of the Blended Products as set

19   forth herein.

20     122.  Plaintiff and the Class members seek relief to the fullest extent allowable under

21   Utah Code section 13-11-19, including but not limited to:  a declaratory judgment under section

22   13-11-19(1)(a); an injunction under section 13-11-19(1)(b); and actual damages or $2,000,

23   whichever is greater, plus court costs under section 13-11-19(2).

24     123.  Therefore, Plaintiff seeks relief as set forth below.

25

26

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## XII.  SEVENTH CAUSE OF ACTION

### (Unjust Enrichment)

**(On behalf of Plaintiff and members of the Nationwide Class Against all Defendants)**

124.  Plaintiff repeats and re-alleges the allegations contained in above as if fully set forth herein.

125.  By deceiving consumers into paying more for a less expensive and inferior product, Defendants have unjustly enriched themselves at the expense of Plaintiff and the Class by receiving profits from the improperly labeled Blended Products.  Defendants are aware of this benefit, by retaining said monies for the benefit of Defendants' respective businesses.  Defendants are therefore required in equity and good conscience to compensate Plaintiff and members of the Class for the damages they have suffered as a result of Defendants' inequitable conduct.

126.  Defendants have made false and misleading statements and/or omissions regarding the Blended Products, as described herein.

127.  The Blended Products are marketed directly to the consumer by Defendants, come in sealed packages, and do not change from the time they leave Defendants' possession until they arrive in stores or online to be sold to consumers.  Albion, as discussed above, markets directly to consumers on the Blended Products' labels, and approves or otherwise authorizes the label before it reaches the consumer.

128.  Plaintiff and Class Members conferred a benefit on Defendants by purchasing the Blended Products.  Defendants accepted and retained the benefit in the amount of the purchase price and/or profits it earned from sales of the Blended Products to Plaintiff and other Class members.  Albion accepted and retained the benefit in the amount of their profits earned and/or derived from its resellers of the Blended Products.  But for Albion's deceptive labeling of the Blended Products, it would not have sold, or would not have sold as much of, the Blended Products at the price it did.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

129.  Defendants profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendants to be permitted to retain said benefit.

130.  Plaintiff and Class members do not have an adequate remedy at law against Defendants (in the alternative to the other causes of action alleged herein).

131.  Plaintiff and Class members are entitled to restitution of the excess amount paid for the Blended Products, over and above what they would have paid if the Blended Products had been adequately labeled, and Plaintiff and Class members are entitled to disgorgement of the profits Defendants derived from the sale of the Blended Products.

132.  By reason of the foregoing, Defendants are liable to Plaintiff and the Class for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## XIII.  EIGHTH CAUSE OF ACTION

### (Fraud By Omission)

### (On behalf of Plaintiff and the members of the Nationwide Class Against all Defendants)

133.  Plaintiff repeats and re-alleges the allegations contained in above as if fully set forth herein.

134.  Defendants failed to disclose that the Blended Products included Oxide, a material fact to Plaintiff and members of the Class.

135.  Defendants knew that Plaintiff and members of the Class, who look to the labels that contain the Blended Products to understand the ingredients therein, were ignorant of the fact that the Blended Products contained Oxide, and were without any opportunity to discover the truth.

136.  By omitting the true nature of the Blended Products' ingredients, Defendants induced Plaintiff and the Class Members into purchasing the Blended Products.  Plaintiff and

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   the Class Members would not have purchased the Blended Products or paid a price premium to

2   purchase them had they known.

3        137.  As a direct and proximate result of Albion's improper conduct, Plaintiff and the

4   other members of the Class have suffered damages and ascertainable losses of moneys and/or

5   property in amounts to be determined by the Court or jury, by paying more for the Blended

6   Products than they would have, and/or by purchasing the Blended Products when they would

7   not have done so, had Albion not omitted the qualities of the Blended Products as set forth

8   herein.

9        138.  By reason of the foregoing, Defendants are liable to Plaintiff and the Class for the

10  damages that they have suffered as a result of Defendants' actions, the amount of such damages

11  to be determined at trial, plus attorneys' fees.

12                     **XIV.  PRAYER FOR RELIEF**

13        WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against

14  Defendants as follows:

15        A.     For preliminary and permanent injunctive relief enjoining Defendants, its

16  agents, servants and employees, and all persons acting in concert with them, from engaging in,

17  and continuing to engage in, the unfair, unlawful and fraudulent business practices alleged

18  above and that may yet be discovered in the prosecution of this action;

19        B.     For certification of the putative Class and appointment of Plaintiff as

20  representative of the Class and her counsel as Class counsel;

21        C.     For restitution and disgorgement of all money or property wrongfully obtained

22  by Defendants by means of its herein alleged unlawful, unfair, and fraudulent business

23  practices;

24        D.     For an accounting by Defendants for any and all profits derived by Defendants

25  from its herein alleged unlawful, unfair and fraudulent conduct and or business practices;

26        E.     For an award of statutory damages according to proof;

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    F.    For an award of general damages according to proof;

2    G.    For an award of special damages according to proof;

3    H.    For exemplary damages;

4    I.    For an order requiring Defendants to cease and desist from engaging in the

5    wrongful conduct alleged herein and to engage in a corrective advertising campaign;

6    J.    For attorneys' fees and expenses pursuant to all applicable laws; and

7    K.    Awarding Plaintiff and the Class such other and further relief as this Court

8    deems just and proper.

9    ## XV.  DEMAND FOR TRIAL BY JURY

10    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury.

11

12    RESPECTFULLY SUBMITTED AND DATED this 29th day of June, 2015.

13                            TERRELL MARSHALL DAUDT & WILLIE PLLC

14

15                            By:   /s/ Beth E. Terrell, WSBA #26759
                                    Beth E. Terrell, WSBA #26759
16                                  Email:  bterrell@tmdwlaw.com
                                    Adrienne D. McEntee, WSBA #34061
17                                  Email:  amcentee@tmdwlaw.com
                                    936 North 34th Street, Suite 300
18                                  Seattle, Washington  98103-8869
                                    Telephone:  (206) 816-6603
19                                  Facsimile:  (206) 350-3528

20                                  Richard W. Meirowitz (Admitted *Pro Hac Vice*)
                                    E-mail:  meirowitz@aol.com
21                                  LAW OFFICE OF RICHARD W. MEIROWITZ
                                    10 Muncy Avenue, Suite 606
22                                  West Babylon, New York 11704
                                    Telephone:  (917) 612-3409
23

24

25

26

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Kim E. Richman (Admitted *Pro Hac Vice*)
E-mail:  krichman@richmanlawgroup.com
THE RICHMAN LAW GROUP
195 Plymouth Street
Brooklyn, New York 11201
Telephone:  (212) 687-8291

Benjamin M. Lopatin (Admitted *Pro Hac Vice*)
E-mail:  blopatin@elplawyers.com
EGGNATZ, LOPATIN & PASCUCCI, LLP
580 California Street, Suite 1200
San Francisco, California  94104
Telephone:  (415) 324-8620

*Attorneys for Plaintiff*

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on June 29, 2015, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

Fred B. Burnside, WSBA #32491
Email:  fredburnside@dwt.com
Stephen M. Rummage, WSBA #11168
Email:  steverummage@dwt.com
Katherine Keely Rankin, WSBA #47699
Email:  keelyrankin@dwt.com
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
Telephone:  (206) 622-3150

*Attorneys for Defendant Albion Laboratories, Inc.*

Derek Newman, WSBA#26967
Email:  dn@newmanlaw.com
Jake Bernstein, WSBA #39362
Email:  jake@newmanlaw.com
NEWMAN DU WORS LLP
2101 Fourth Avenue,  Suite 1500
Seattle, Washington 98121
Telephone:  (206) 274-2800
Facsimile:  (206) 274-2801

*Attorneys for Defendant Designs for Health, Inc.*

David N. Bruce, WSBA #15237
Email:  dbruce@sbwllp.com
Miles A. Yanick, WSBA #26603
Email:  myanick@sbwllp.com
Caitlin K. Hawks, WSBA#46669
Email:  chawks@sbwllp.com
SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
Telephone:  (206) 749-0500
Facsimile:  (206) 749-0600

*Attorneys for Defendant Seeking Health, LLC*

FIRST AMENDED COMPLAINT – CLASS ACTION - 38
CASE NO. 2:15-cv-00585-MJP

1   DATED this 29th day of June, 2015.

2

3        TERRELL MARSHALL DAUDT & WILLIE PLLC

4       By:   /s/ Beth E. Terrell, WSBA #26759
         Beth E. Terrell, WSBA #26759

5        Email: bterrell@tmdwlaw.com
        936 North 34th Street, Suite 300

6        Seattle, Washington  98103
        Telephone:  (206) 816-6603

7        Facsimile:  (206) 350-3528

8       *Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com