UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONNA COPELAND,<br><br>  Plaintiff,<br><br>  v.<br><br>ALBION LABORATORIES, INC. et al.,<br><br>  Defendants. | CASE NO. C15-585 MJP<br><br>ORDER ON DEFENDANT ALBION'S MOTION TO DISMISS |

THIS MATTER comes before the Court on Defendant Albion Laboratories, Inc.'s Motion to Dismiss the First Amended Complaint Pursuant to FRCP 9(b) and 12(b)(6). (Dkt. No. 29.) Having reviewed the Motion, Plaintiff Donna Copeland's Response (Dkt. No. 32), Albion's Reply (Dkt. No. 37), and having heard oral argument on November 9, 2015, the Court hereby GRANTS the Motion.

**Background**

According to the First Amended Complaint, Plaintiff and putative class representative Donna Copland began taking magnesium as a dietary supplement to treat pain due to fibrocystic breasts. (FAC, Dkt. No. 26 at 3.) At first she took magnesium citrate, but then learned that the

absorption rate for magnesium citrate is low. (Id.) Her sister's doctor recommended that she take magnesium glycinate and specifically told Plaintiff Designs for Health was a reputable brand. (Id.)

Plaintiff alleges that magnesium glycinate, a "chelated" form of magnesium, is more easily absorbed and "bioavailable" than magnesium oxide and thus more attractive to consumers, but it is also more expensive to manufacture. (Dkt. No. 26 at 8.) Both Designs for Health and Seeking Health sell magnesium supplements containing Albion's product, a blend of both magnesium glycinate and magnesium oxide. (Dkt. No. 26 at 3–4.) Designs for Health's product is labeled "Magnesium Glycinate Chelate" and its ingredient list specifies that the magnesium is "TRAACS® Magnesium Glycinate Chelate Buffered." (Dkt. No. 26 at 9, 15.) TRAACS® is Albion's registered trademark. (Id. at 15.) There is no mention of magnesium oxide. (Id. at 9.) Seeking Health's product is labeled "Optimal Magnesium" and its ingredient list specifies that the magnesium is "TRAACS® Magnesium Bisglycinate Chelate Buffered." (Dkt. No. 26 at 9, 15.) Other ingredients are also listed, but not magnesium oxide. (Id.) In addition to Albion's TRAACS® registered trademark, the label also includes an "Albion Medallion," and the label notes that both TRAACS® and the medallion are registered trademarks of Albion Laboratories, Inc. (Id.)

Relying on the labels, Plaintiff alleges that she purchased Albion's magnesium supplements from Designs for Health and from Seeking Health, abandoning each re-seller in turn when she learned that the supplements contained magnesium oxide in addition to magnesium glycinate. (Dkt. No. 26 at 3–4.) Plaintiff alleges Albion had the right to control the labeling used by its re-sellers. As evidence to support this contention, Plaintiff cites the example of a third re-seller (neither Designs for Health nor Seeking Health), which stated in an email to Plaintiff's

ORDER ON DEFENDANT ALBION'S MOTION TO DISMISS- 2

former counsel in response to a review he posted on Amazon.com and a previous email from him, "[W]e label all ingredients in strict accordance with the requirements legally set forth by Albion Nutrition. If we didn't label our product exactly as Albion dictates, we simply couldn't advertise the fact that we use their ingredients." (Dkt. No. 26 at 13; Dkt. No. 1, Ex. C at 49.) Plaintiff also alleges a representative of the re-seller wrote in comments to an online review, "Albion, did review, direct, and approve the current content of our label, with instructions to label the ingredient in question as TRAACS® Magnesium Glycinate Chelate Buffered. There is also a contract in place between us which governs all Albion trademarks and descriptions." (Dkt. No. 26 at 13–14.)

Plaintiff has claims against Designs for Health and Seeking Health as well, but the claims relevant to Albion's motion are Claim 5 (against Albion only), violation of the Utah Consumer Sales Practices Act (deceptive practices), Utah Code § 13-11-4(2); Claim 6 (against Albion only), violation of the Utah Consumer Sales Practices Act (unconscionable practices), Utah Code § 13-11-5(1); Claim 7 (against Albion and both re-sellers), unjust enrichment; and Claim 8 (against Albion and both re-sellers), fraud by omission.

Albion now asks the Court to dismiss the claims against it for failure to plead facts with the requisite specificity as to the fraud claim under Federal Rule of Civil Procedure 9(b) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**Discussion**

I.  Legal Standard

To survive a motion to dismiss, a complaint must state a claim for relief that is plausible on its face. Fed. R. Civ. P. 12(b)(6); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

1    Courts follow a two-step approach when deciding whether a complaint survives a

2 12(b)(6) motion. Iqbal, 556 U.S. at 678–79. First, "a court must accept as true all of the

3 allegations contained in a complaint" unless the allegations are legal conclusions. Id. Second, the

4 Court must decide whether the claim for relief is plausible—a context-specific task. Id. The

5 Court may consider "documents attached to the complaint, documents incorporated by reference

6 in the complaint, or matters of judicial notice" when making its determination. United States v.

7 Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

8    When evaluating a motion to dismiss, the Court examines fraud-based claims in

9 accordance with the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

10 Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Fraud allegations must be specific

11 enough to give the defendant notice of the particular misconduct at issue and must include "an

12 account of the time, place, and specific content of the false representations as well as the

13 identities of the parties to the misrepresentations." Id.; Swartz v. KPMG LLP, 476 F.3d 756, 764

14 (9th Cir. 2007) (quotation marks omitted); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d

15 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when,

16 where, and how' of the misconduct charged."). However, "[m]alice, intent, knowledge, and other

17 conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

18    II.   Choice of Law

19    Albion argues Texas, not Utah, law applies to Plaintiff's claims against it because

20 Plaintiff resides in Texas and "presumably made the decision to purchase the products online

21 while in Texas." (Dkt. No. 29 at 14–15.) Albion further invites the Court to dismiss the Utah

22 statutory claims on the basis that Texas law applies. (Dkt. No. 29 at 16 n.5.) Because choice of

23 law depends in part on facts not alleged in the pleadings, the Court declines to decide choice of

24 law at this time.

III. Supplier Status Under the UCSPA

The Utah Consumer Sales Practices Act ("UCSPA") "generally prohibits deceptive or unconscionable acts or practices by a supplier in connection with a consumer transaction." <u>Carlie v. Morgan</u>, 922 P.2d 1, 5–6 (Utah 1996) (internal quotation marks omitted). Plaintiffs' Claims 5 and 6 allege violations by Albion of the UCSPA through deceptive and unconscionable conduct, respectively. Albion argues the UCSPA does not apply to it because it does not qualify as a "supplier" under the statute.

Both of Plaintiff's claims apply only to acts by a "supplier," defined as "a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer." UCSPA § 13-11-3; § 13-11-4; 13-11-5. A "consumer transaction," meanwhile, is defined in relevant part here as "a sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible (except securities and insurance) to, or apparently to, a person for: (i) primarily personal, family, or household purposes . . . ." UCSPA § 13-11-3(2)(a).

The Utah Consumer Sales Practices Act is based on the Uniform Consumer Sales Practices Act. See <u>Brown v. Constantino</u>, No. 2:09CV00357DAK, 2009 WL 3617692, at *2 (D. Utah Oct. 27, 2009). With respect to the definitions at issue here, the Uniform and Utah Acts are nearly identical. See Uniform Consumer Sales Practices Act § 2(1) ("'consumer transaction' means a sale, lease, assignment, award by chance, or other disposition of an item of goods, a service, or an intangible [except securities] to an individual for purposes that are primarily personal, family, or household"), § 2(5) ("'supplier' means a seller, lessor, assignor, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer"). Because the phrase "whether or not he deals directly with the

consumer" in the definition of "supplier" is somewhat ambiguous, the Court considers the drafters' Comments on the Uniform Act helpful in interpreting the Utah Act. The Comment on the definition of "supplier" gives a very broad gloss on the term: "In addition to manufacturers, wholesalers, and dealers, debt collection agencies and advertising agencies fall within this definition." Uniform Consumer Practices Act § 2(5) (Comment).

Albion is correct that some Utah courts have been skeptical of the application of the definition to parties once removed from the alleged consumer transaction. See Holmes v. American States Ins. Co., 1 P.3d 552, 557 (Utah App. 2000). Holmes held that an appellee that sold a damaged vehicle at auction to a second company, which sold the vehicle in turn to the appellant, was not a "supplier" with respect to the appellant. Id. Plaintiff is incorrect that only an insurer was sued (see Dkt. No. 32 at 10): there were two appellees, including the seller at auction. However, the opinion contains little discussion of the issue and there existed additional barriers to supplier status under the UCSPA definitions: notably, the fact that appellant, who owned 50 vehicles and rented them out for movie productions, was evidently not purchasing the vehicle for "primarily personal, family, or household purposes." See id. at 554, 557.

The Utah Supreme Court has held that a manufacturer qualified as a supplier under the UCSPA where the manufacturer made allegedly deceptive representations in promotional materials that were supplied to a consumer via an intermediary. State ex rel. Div. of Consumer Protection v. GAF Corp., 760 P.2d 310, 314 (Utah 1988). Plaintiff also points to a federal district court case holding that the UCSPA extended to the deceptive conduct—turning back odometers on used vehicles—of defendants that sold the vehicles to independent dealers, which then sold them to consumers. Wilkinson v. B & H Auto, 701 F. Supp. 201, 204–05 (D. Utah 1988).

While Plaintiff interprets these cases as holding that "supplier" liability can attach to Albion merely through the quality guarantees represented by the Albion medallion and TRAACS trademark (Dkt. No. 32 at 10), Albion correctly points out that the cases hold that the initial seller must directly engage in the deceptive representation to be held liable. (Dkt. No. 37 at 4.) This debate ultimately goes to the question whether Plaintiff has stated Albion's liability for the re-sellers' statements with the requisite particularity, not whether Albion is inherently protected against liability under the UCSPA by virtue of its place in the chain of commerce.

IV.     Specificity Under Rule 9(b)

Albion next argues that even if Plaintiff can assert Albion's liability as a supplier, she fails to do so with the requisite particularity. Rule 9(b) applies to UCSPA claims based on deceptive conduct. See Jackson v. Philip Morris, Inc., 46 F. Supp. 2d 1217, 1222 (D. Utah 1998). Plaintiff also concedes that Rule 9(b) applies to her UCSPA claim alleging unconscionable conduct. (Dkt. No. 32 at 11.)

Albion argues Plaintiff's claims lack specificity because while she alleges that Albion had the right to control certain re-sellers' labeling (raising the possibility that Albion might not have had the right to control other re-sellers' labeling), she fails to allege that Albion itself made "any specific representations" to consumers. (See Dkt. No. 29 at 20.) "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.'" Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) (alterations and quotation marks omitted). Plaintiff is unable to allege specific facts that indicate Albion was responsible for the representations contained on Designs for Health and Seeking Health's labels. The trademark license agreement with Designs for Health requires Designs for Health to "agree that, with respect to use of Albion Ingredients, Albion Patent

1  Numbers and/or Albion Licensed Trademarks the nature and quality of Covered Products and all

2  labeling, advertising, promotional, and other related materials marked with an Albion Patent

3  Number or Albion Licensed Trademark shall conform to standards set by Albion. Customer

4  agrees to use the Albion Patent Numbers and Albion Licensed Trademarks only in the form and

5  manner and with appropriate legends as instructed from time to time by Albion." (Dkt. No. 1 at

6  41.) The relevant mark at issue here is "TRAACS ™"; the Covered Product is "MAGNESIUM

7  Gl.YCINATE CHELATE." (Id. at 44, 46.) But Plaintiff does not allege any facts showing that

8  Albion in fact promulgated standards or instructions or that such standards or instructions

9  required Designs for Health to make the allegedly deceptive representations at issue. Plaintiff

10  points to no agreement with Seeking Health at all.

11      Plaintiff's citation to various communications with a third-party re-seller about Albion's

12  control over the third party's representations is not helpful here. Particularity under Rule 9(b) is

13  distinct from plausibility under Rule 8(b), and it requires the pleader to cite facts supporting the

14  attribution of third party statements to the defendant. See Raab v. Gen. Physics Corp., 4 F.3d

15  286, 288–89 (4th Cir. 1993). Plaintiff has failed to do so here.

16      V.    Unjust Enrichment

17      Albion argues Plaintiff has failed to state an unjust enrichment claim under Texas law

18  (Dkt. No. 29 at 16–23) or Utah law (Dkt. No. 29 at 24). Under either state's law, Albion argues

19  that since Albion disclosed the fact that the supplements contained magnesium oxide on the

20  product data sheet it disseminated to its customers, Plaintiff has not plausibly alleged that Albion

21  was able to retain any unjust benefit Plaintiff conferred at the retail level. (See Dkt. No. 29 at

22  23.) The Court agrees that Plaintiff did not directly confer any benefit on Albion, and Plaintiff

23

24

ORDER ON DEFENDANT ALBION'S MOTION
TO DISMISS- 8

has failed to allege specific facts making this attenuated trickle-up theory of unjust enrichment plausible.

VI.     Fraud By Omission

Albion next argues that Plaintiff's fraud by omission claim fails because Plaintiff has not adequately alleged a duty to disclose facts about the composition of its supplements to Plaintiff. (Dkt. No. 29 at 25.)

Plaintiff alleges Albion had a duty to disclose where the alleged "defect is not discoverable by reasonable care." (Dkt. No. 32 at 19.) The case law Plaintiff cites for this proposition, however, is specific to the sale of real property and is not relevant here. See Mitchell v. Christensen, 31 P.3d 572, 575 (Utah 2001) ("A seller of realty is not obligated to reveal all that he or she knows about the property involved. Rather [. . .] the duty to communicate or disclose in a vendor-vendee transaction exists only where a defect is not discoverable by reasonable care.") (quotation marks and citation omitted). Under either Texas or Utah law, fraud by omission or fraudulent concealment requires a plaintiff to demonstrate the defendant had a duty to disclose the omitted or concealed information. See Hoffman v. AmericaHomeKey, Inc., 23 F. Supp. 3d 734, 744 (N.D. Tex. 2014); Smith v. Frandsen, 94 P.3d 919, 923 (Utah 2004). In Utah, courts impose a duty to disclose only where there is a fiduciary or special relationship between the parties. First Sec. Bank of Utah N.A. v. Banberry Dev. Corp., 786 P.2d 1326, 1330–32 (Utah 1990). Plaintiff does not allege a fiduciary or special relationship, so her fraud by omission claim fails under Utah law.

In Texas, a duty to disclose can arise in four circumstances: (1) a fiduciary or other special relationship between the parties; (2) new information makes a defendant's earlier representation misleading or untrue; (3) a defendant conveys a false impression by making a partial disclosure; and (4) a defendant who voluntarily discloses information has a duty to

disclose the whole truth. Labaty v. UWT, Inc., --- F.Supp.3d ----, 2015 WL 4716087, at *9 (W.D. Tex. Aug 7, 2015) (citing Lesikar v. Rappeport, 33 S.W.3d 282, 298–99 (Tex. App. 2000); Playboy Enters., Inc. v. Editorial Caballero, S.A. de C.V., 202 S.W.3d 250, 260 (Tex. App. 2006)). This fraud by omission claim is subject to the same heightened pleading standards as Plaintiff's UCSPA claim, so it suffers from the same defect: failure to plead facts with particularity showing that the allegedly false impressions or partial disclosures are attributable to Albion. See also Hoffman v. AmericaHomeKey, Inc., 23 F. Supp. 3d 734, 746 (N.D. Tex. 2014) (holding that a fraud by omission claim fails where the complaint fails to specify what information the defendant personally disclosed or what representations the defendant personally made that would obligate her to make further disclosures).

**Conclusion**

Because Plaintiff has failed to plead with particularity her UCSPA and fraud claims and has failed to state a claim with respect to her unjust enrichment claim, Albion's Motion to Dismiss is GRANTED with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 16th day of November, 2015.

Marsha J. Pechman
Chief United States District Judge